**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:17-cv-00045-CMA-KLM

STEPHANIE LOPEZ, individually,

      Plaintiff,

v.

CARL EDWARDS, individually, and
CASPER TRAILER SALES, INC., a Colorado Corporation,

      Defendants.

---

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

      Defendants Carl Edwards and Casper Trailer Sales, Inc., by and through undersigned counsel GODFREY | JOHNSON, P.C. file this Motion for Partial Summary Judgment ("Motion"), requesting oral argument pursuant to D.C.COLO.LCivR 7.1(h), and state in support as follows:

## I. INTRODUCTION

      Plaintiff Stephanie Lopez asserts two claims. First, she claims violations of the minimum wage and overtime sections of the Fair Labor Standard Act ("FLSA" or "Act"), 29 U.S.C. § 106 and 107, against both Defendants. Second Am. Compl. (ECF no. 60) ¶¶ 51-54. Second, she claims a violation of the Colorado Wage Act ("CWA"), specifically, the section pertaining to payment of final wages, C.R.S. § 8-4-109, against Casper Trailer

Sales, Inc.[1] *Id.* ¶¶ 55-61.

Ms. Lopez's FLSA claim can be divided factually into two separate time periods. First, on May 24, 2015, Ms. Lopez indisputably became an hourly employee of Casper Trailer Sales, Inc., as evidenced by its payroll. With regard to this time period, Defendants deny that Ms. Lopez is entitled to unpaid minimum wage and overtime, though they admit she was covered by the FLSA while she was a payroll employee.

Ms. Lopez also claims that, prior to May 24, 2015, she worked for years without any wages. Ms. Lopez claims she performed work for Casper Trailer Sales, Inc. as an employee, despite having no records of her employment—either kept by herself or her employer. Ms. Lopez claims that she performed this work with the expectation that she would receive title to a house owned by Defendant Edwards.

This Motion addresses Ms. Lopez's claims for overtime and minimum wage prior to May 24, 2015. In short, it is Defendants' contention that, for the period before she became a payroll employee of Casper Trailer Sales, Inc., Ms. Lopez's claim of employment can only extend, if at all, to Mr. Edwards individually, not his company.

To the extent she can establish an employment relationship with Defendant Edwards individually prior to May 24, 2015, her claims are not covered under the FLSA. To be entitled to the protections of the FLSA, a plaintiff must demonstrate coverage under the Act. To that end, the FLSA covers only employees engaged in interstate commerce under the Act, which can occur through two channels: enterprise coverage and individual

---

[1] Casper Trailer Sales, Inc. has a registered trade name "JDL Trailer Sales 2734 Lake Ave. Pueblo, CO 81004."

coverage. Put simply, the FLSA does not cover employee-employer relationships that do not implicate interstate commerce.

Ms. Lopez simply cannot meet her burden to prove enterprise coverage or individual coverage under the Act prior to May 24, 2015. First, Mr. Edwards was not a covered employer, as defined by the Act. Second, she was not engaged in interstate commerce, also as required by the Act. Therefore, the FLSA does not cover Ms. Lopez's alleged employment with Defendants prior to when she was a payroll employee of Casper Trailer Sales, Inc.

Next, Ms. Lopez's claim under Section 109 of the CWA claim must fail, except as that claim seeks final wages, which are all that is currently allowed by that statute. Though a related question has been certified to the Colorado Supreme Court, unless or until the Colorado Supreme Court rules otherwise that claim is limited to unpaid final wages or penalties related to an unpaid demand therefor.

In sum, Defendants request that the Court grant summary judgment as it relates to Ms. Lopez's FLSA claim for unpaid wages before she was a payroll employee of Casper Trailer Sales, Inc. and that the Court limit Ms. Lopez's recovery under the CWA to final wages. The Motion, if granted, would substantially reduce the presentation of evidence at trial.

## II. UNDISPUTED FACTS

1.      Carl Edwards operates several businesses, including Casper Trailer Sales, Inc. and SJE Holdings, Inc. a property holding company. (Movants' Appendix pp. 2-5 - Edwards Dep. 4:24-5:24, 5:6-10, 5:25-6:11, 11:17-20.)

2.      Casper Trailer Sales, Inc. is in the business of servicing and selling recreational vehicles ("RVs"). (*Id*. pp. 2-3, 5 - Edwards Dep. 4:24-5:24, 11:17-20.)

3.      Mr. Edwards also operates a motel and a storage yard. (*Id*. pp. 3-4 - Edwards Dep. 5:6-10, 5:25-6:11.)

4.      The motel and storage yard are owned by SJE Holdings, Inc. (*Id*. p. 4 - Edwards Dep. 6:12-18.)

5.      Mr. Edwards lives at 2405 Alia Court, Pueblo, CO. (*Id*. p. 2 - Edwards Dep. 4:4-5.)

6.      Casper Trailer Sales, Inc. and Mr. Edward's general office are located at 2734 Lake Avenue, Pueblo, CO. (*Id*. pp. 2-4 -  Edwards Dep. 4:17-18, 27:4-14.)

7.      Mr. Edwards met Ms. Lopez around 2007. (*Id*. p. 120 - Lopez Dep. 25:8-9.)

8.      Ms. Lopez grew up in the foster system and was in and out of prison as a juvenile and young adult. Lopez Dep. (*Id.* pp. 113-17 - Lopez Dep. 11:16-21, 13:8-16:25.)

9.      Mr. Edwards took on a mentorship role for Ms. Lopez that included talking to her about finances, teaching her basic shop skills, and providing her with resources including a used truck, clothes, and on occasion a loan. (*Id*. pp. 16-18, 26-27, 142 - Edwards Dep. 40:23-41:19, 42:10-20, 57:18-21, 60:19-61:17; Lopez Dep. 225:1-7.)

10.     Mr. Edwards and Ms. Lopez became friends. (*Id.* pp. 26, 143-44 - Edwards Dep. 57:3-10; Lopez Dep. 235:25-236:1.)

11.     He grew to think of her like a daughter. (*Id.* pp. 22-26, 29, 34 - Edwards Dep. 50:14-52:14; 53:2-10; 57:3-8; 62:16-21; 91:5-11.)

12.     She grew to think of him like a father figure. (*Id.* p. 144 - Lopez Dep. 236:2-6.)

13.     Approximately ten years ago, Mr. Edwards purchased the property at 1208 Elko

Street, which he calls "the farmhouse." (*Id.* p. 23 - Edwards Dep. 51:17-19.)

14.     SJE Holdings, Inc. owns the farmhouse. (*Id.* pp. 36-37 - Edwards Dep. 115:16-116:4, 116:16-21.)

15.     Mr. Edwards allowed Ms. Lopez and her girlfriend to live at the farmhouse rent-free, in exchange for upkeep of the property. (*Id.* pp. 19-22, 24 - Edwards Dep. 47:10-20, 48:17-49:1, 50:5-13, 52:15-17.)

16.     Around 2014, Ms. Lopez obtained a settlement from her mother's wrongful death lawsuit. (*Id.* pp. 124-126 - Lopez Dep. 104:12-106:7.)

17.     Ms. Lopez used the settlement proceeds to purchase a house on Van Buren Street in Pueblo. (*Id.* p. 135 - Lopez Dep. 181:12-24.)

18.     On May 24, 2015, Mr. Edwards hired Ms. Lopez to work for Casper Trailer Sales, Inc. (*Id.* p. 11 - Edwards Dep. 32:10-13.)

19.     Ms. Lopez's first paycheck from Casper Trailer Sales, Inc. is for a pay period ending May 27, 2015. (*Id.* pp. 53, 78 – Payroll Summary and Pay Stub).

20.     Mr. Edwards paid Ms. Lopez $10/hour to start; then he increased her pay to $15/hour. (*Id.* pp. 35, 53-94 - Payroll Summary and Pay Stubs; Edwards Dep. 111:5-14.)

21.     Casper Trailer Sales, Inc. kept timecards for Ms. Lopez spanning May 24, 2015 through March 7, 2016. (*Id.* pp. 53-94 - Payroll Summary and Pay Stubs.)

22.     Casper Trailer Sales, Inc. provided Ms. Lopez W-2s for 2015 and 2016. (*Id.* pp. 95-103 - Taxes and W2s.)

23.     Ms. Lopez received the compensation reflected on the paystubs. (*Id.* p. 105 - Discovery Responses, p. 2 (#4).)

24.    In May 2016, Ms. Lopez made a claim for unemployment benefits, claiming constructive discharge due to a manager blowing smoke at her. (*Id.* pp. 38-52 – Unemployment Insurance Records.)

25.    Ms. Lopez's benefits were based on employment spanning from May 2015 to March 2016. (*Id.*)

26.    Ms. Lopez did not appeal the amount of unemployment benefits she received. (*Id.* p. 143 - Lopez Dep. 235:8-10.)

27.    Ms. Lopez has no records related to her employment prior to May 24, 2015. (*Id.* p. 138 - Lopez Dep. 188:6-9.)

28.    Ms. Lopez has no record of hours spent working for Mr. Edwards or Casper Trailer Sales, Inc. prior to May 24, 2015. (*Id.* p. 106 - Discovery Responses, p. 3 (#5).)

29.    There is no written employment contract or other documentation of her employment prior to May 24, 2015. (*Id.* pp. 133-34 - Lopez Dep. 178:18-179:1.)

30.    Mr. Edwards employed other hourly employees as RV technicians between January 2014 and May 24, 2015. (*Id.* p. 6 - Edwards Dep. 17:15-25.)

## III. ARGUMENT

### A. Summary Judgment Standard

"Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Rules allow a party to move for partial summary judgment, identifying each part of a

claim or defense on which judgment is sought. *Id.* 56(a).[2]

A fact is "material" if it pertains to an element of a claim or defense; a dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 248-49; *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir.1987).

Once a movant has met his initial burden under Rule 56(c), the burden shifts to the non-moving party to show that there are issues of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-movant bears the burden of proof at trial, the movant may point to an absence of evidence establishing a genuine issue of material fact in the record supporting each challenged element. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F.Supp.2d 1106, 1111 (D.Colo.2002).

> The movant essentially forces the respondent to present sufficient, competent evidence to establish a *prima facie* case. If the respondent fails to present competent evidence to establish every element of its claim or defense, entry of summary judgment in favor of the movant is appropriate because the respondent cannot carry its burden of proof.

---

[2] Judge Arguello's practice standards discourage motions for partial summary judgment, except those that would greatly reduce the evidence presented at trial. This motion would do so. If granted, it would restrict the parties' presentation of evidence pertaining to approximately sixteen months of alleged employment, which due to the look back limits of the FLSA also requires Ms. Lopez to present evidence proving Mr. Edward's willful violation of the Act. Further, it would eliminate the need to present documents for which the parties have engaged experts to opine as to the authenticity of signatures. In sum, undersigned estimates that the length of trial would be reduced by approximately half.

*Id.* Unsupported allegations without "any significant probative evidence tending to support the complaint" are insufficient, as are conclusory assertions that factual disputes exist. *Anderson*, 477 U.S. at 247–48.

**B.  Fair Labor Standards Act Coverage**

The FLSA, 29 U.S.C. §§ 201 *et seq*., requires payment of minimum wage and overtime pay for employees who are "engaged in commerce…or…employed in an enterprise engaged in commerce." 29 U.S.C. §§ 206, 207; s*ee also Reagor v. Okmulgee Cty. Family Res. Ctr*., 501 Fed. Appx. 805, 808 (10th Cir. 2012).

29 U.S.C. § 206 provides, in relevant part:

(a) Employees engaged in commerce […]
Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
(1) except as otherwise provided in this section, not less than—[…]
(C) $7.25 an hour […]

29 U.S.C. § 207, provides, in relevant part:

(a) Employees engaged in interstate commerce […]
(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

As a federal law regulating employment relations, the Act is limited by Congress' authority under the Commerce Clause. Const. Art. I § 8, cl. 3 (Commerce Clause); *McLeod v. Threlkeld,* 319 U.S. 491, 497 (1943) (Congress intends to "regulate only

activities constituting interstate commerce, not activities merely affecting commerce.").

For activities to be subject to the FLSA, two conditions must be satisfied. First, the employment must be covered by the act pursuant to either 'individual' or 'enterprise' coverage. *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985). Second, the employee must demonstrate an employer-employee relationship within the meaning of the Act. *Id.* at 295.[3]

### C.  Ms. Lopez Was Not An Employee Of Casper Trailer Sales, Inc. Prior To May 24, 2015

Ms. Lopez cannot demonstrate an employer-employee relationship with Casper Trailer Sales, Inc. prior to May 24, 2015. If anything, Ms. Lopez can only create a factual dispute over whether she was an employee of Mr. Edwards individually.

#### 1.  Burden of proof and elements.

To establish her FLSA claim, Ms. Lopez bears "the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act." *Robertson v. Bd. of Cty. Comm'rs of Cty. of Morgan*, 78 F. Supp. 2d 1142, 1150 (D. Colo. 1999) (citing *Purdham v. Fairfax County School Bd.*, 637 F.3d 421, 427 (4th Cir. 2011); *Reich v. ConAgra, Inc.,* 987 F.2d 1357, 1360 (8th Cir.1993)). The ultimate determination of whether Ms. Lopez was an "employee" is a question of law for the Court. *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989).

The FLSA defines "employee" to include "any individual employed by an employer"

---

[3] In this Motion, these issues will be addressed in reverse order because Ms. Lopez's ability to prove individual or enterprise coverage is based on her ability to prove an employment relationship with Casper Trailer Sales, Inc. prior to May 2015.

and defines "employ" expansively to mean "suffer or permit to work." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. §§ 203(e), (g)). The Act defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

"Because the definition of 'employee' under the FLSA is not precise, courts apply the Supreme Court's 'economic reality' test to determine the scope of employee coverage under the FLSA in particular cases." *Johns v. Stewart*, 57 F.3d 1544 (10th Cir. 1995) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1966); *Dole*, 875 F.2d at 804). That test focuses "upon the circumstances of the whole activity, with the ultimate criterion being the economic reality of the relationship." *Id.* (citations omitted).

Under this test, courts generally consider:

(1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

*Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). This test also may include inquiries into whether the alleged employer: (1)

1) has the power to hire and fire the employee;
2) supervises and controls the employee's work schedule or conditions of employment;
3) determines the rate and method of payment; and
4) maintains employment records.

*Id*. No one factor is dispositive, but instead "a court must consider the economic realities

and the circumstances of the whole activity." *Robertson*, 78 F. Supp. 2d at 1151.[4]

### 2. *Casper Trailer Sales, Inc. Was Not Ms. Lopez's Employer Prior To May 24, 2015.*

Ms. Lopez was not an employee of Casper Trailer Sales, Inc. except after May 24, 2015 when she was placed on payroll.

According to Mr. Edwards, Ms. Lopez would on occasion "hang around" the shop of Casper Trailer Sales, Inc. prior to May 2015, primarily working on her own truck. (Movants' Appendix p. 11 - Edwards Dep. 32:10-25.) Nevertheless, she did not provide any services of value to Casper Trailer Sales, Inc. during the period prior to when she was on payroll. (*Id.* pp. 12-13 - Edwards Dep. 34:25-35:3.) Ms. Lopez never cleaned the shop or worked on an RV prior to when she was a payroll employee. (*Id.* pp. 14-15 - Edwards Dep. 36:13-37:16.) Mr. Edwards has consistently stated that Ms. Lopez did not perform any unpaid work and that, prior to when she was on payroll, she did not work for him. (*Id.* pp. 31-32 - Edwards Dep. 67:21-68:8.)

In addition, Casper Trailer Sales, Inc. met its burden under the Act to make, keep, and preserve records of Ms. Lopez's employment when she was an employee. 29 U.S.C. § 211(c). Ms. Lopez has a high burden to prove that these records—or the absence of records prior to May 24, 2015—are false. *McGrath v. Cent. Masonry Corp.*, No. 06–cv–00224, 2009 WL 3158131, at *6 (D.Colo. Sept. 29, 2009) ("An employer's compliance

---

[4] The economic realities analysis is most often applied and best suited to an employee versus independent contractor question. *See Padilla v. Am. Fed'n of State, Cty., & Mun. Employees—Council 18*, No. CV 11-1028 JCH/KBM, 2013 WL 12085976 (D.N.M. Mar. 28, 2013), *aff'd sub nom. Padilla v. Am. Fed'n of State, Cty. & Mun. Employees, Council 18*, 551 F. App'x 941 (10th Cir. 2014).

with section 211(c) 'determines the burden of proof faced by a plaintiff in establishing the number of overtime hours worked.'"). She cannot meet that burden.

In fact, Ms. Lopez cannot even meet the lower standard of proving her work as a matter of just and reasonable inference. *Id*. (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946), superseded by statute on other grounds as stated in *Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C.Cir. 1972)). In both her written discovery and her deposition, Ms. Lopez was unable to quantify her work by "day, week, and month" or to describe her work schedule. (Movants' Appendix p. 106 - Discovery Responses p.3.) Ms. Lopez has no paper records showing how often she performed each task. In short, Ms. Lopez cannot meet her burden here to show that she performed any work as a statutory "employee" of Casper Trailer Sales, Inc. prior to becoming a payroll employee. *Cf. Robertson*, 78 F. Supp. 2d at 1150.

Though the specific inquiries from the economic realities test do not fit this case cleanly, a few of them are helpful. Ms. Lopez's work for Casper Trailer Sales was not integral to the business of Casper Trailer Sales, Inc. *Cf. Baker*, 137 F.3d at 1440. During that time, the business employed other essential RV technicians. (*Id.* p. 6 - Edwards Dep. 17:15-25.) Ms. Lopez was also not economically dependent on Casper Trailer Sales, Inc. prior to May 24, 2015. In fact, Casper Trailer Sales, Inc. never provided her a paycheck and did not maintain employment records for Ms. Lopez prior to that time. *Cf. Baker*, 137 F.3d at 1440. Ms. Lopez has no evidence that other employees of Casper Trailer Sales, Inc. were not compensated and, in fact, admits in her Complaint that Casper Trailer Sales, Inc. maintained a time clock and time records for its other employees and gave employees

regular paychecks at their hourly rate. 2d Am. Compl. ¶¶ 26, 27.

Ms. Lopez claims that she performed the following work between January 4, 2017

and May 25, 2015:

> I typically arrived at work at 7:30, no later than 7:45, to open gates to sales lot, set up workstation, swept up shop, put tools away worked on tasks assigned to me by Mr. Edwards from changing out vents, fans, shrouds, skylight windows, light bulbs, lenses, repairing wires, replacing wires, replacing water pumps, water lines, replacing gaskets on septic, clean out wax seals and toilets, removing old speakers and TVs, as well as installing new speakers and TVs, repairing damaged roofs, replacing rubber roofs, cosmetic repair two framework, winterizing/de-winterizing tin work, repair and replace customizing refurbishing units, even worked on several units that had been condemned or totaled out by customers. As well as maintaining Mr. Edwards many properties which included mending fences, mowing down weeds, picking up debris, feeding his dogs, Properties maintained: one on Acero, one on California Street, one on Poplar Street and three on Lake Avenue, as well as the property on Elko. I moved trailers with the forklift, ran errands, got parts from other locations. Picked up propane, performed a perimeter check when asked to do so. I worked until the shop closed and sometimes later. I worked with Mr. Edwards on Saturdays I did whatever I was asked to do. I would go to the flea market and sell Mr. Edwards property for him on weekends.

(Movants' Appendix pp. 105-06 - Discovery Responses pp. 2-3.)

With a view to the totality of circumstances, Ms. Lopez cannot meet her burden to

show that she performed these tasks on behalf of Casper Trailer Sales, Inc. but as an

extension of her personal relationship and alleged agreement with Mr. Edwards. In fact,

Ms. Lopez's only explanation for why she performed these tasks—to receive a house

from Mr. Edwards—refutes her position that she was an employee of Casper Trailer

Sales, Inc. Casper Trailer Sales, Inc. did not have a house to give. The house was owned

by Mr. Edwards through his company SJE Holdings. (*Id.* pp. 36-37 - Edwards Dep.

115:16-116:4, 116:16-21.)

To the extent that Ms. Lopez can create any genuine fact dispute, it would be only that she was an employee of Mr. Edwards himself, not his company Casper Trailer Sales, Inc. The only evidence in the record, through Ms. Lopez's deposition testimony and written discovery responses, can be summarized as follows: she believed Mr. Edwards would give her the farmhouse at 1208 Elko Street; therefore, she performed various tasks on his behalf as her part of the bargain. Plaintiff's Complaint states that "Plaintiff worked without any cash wages for years in reliance upon Carl Edwards promise to transfer title to a home located at 1208 Elko Street, Pueblo, Colorado to her in exchange for her work." Second Am. Compl. ¶ 16.

Ms. Lopez stated in her written discovery responses that "Mr. Edwards knew I was working in exchange for a place to live (referred to by him as 'room and board') and the promise to have the title to 1208 Elko transferred to me." (Movants' Appendix p. 107 - Discovery Responses p. 4.)  She also stated that "I did what Mr. Edwards asked me to do and I performed those tasks which I knew needed to be performed." (*Id.* p. 108 - Discovery Responses p. 5.) During her deposition, Ms. Lopez stated that she had performed work in exchange for a house, and that the only thing of value she was expecting in exchange for her work was a house. (*Id.* p. 131 - Lopez Dep. 155:13-21.)

Even after she alleges Mr. Edwards rescinded his promise to give her the house, Ms. Lopez claims she kept working under the belief that Mr. Edwards would perform his end of the bargain. (*Id.* pp. 128-29 - Lopez Dep. 119:1-120:1.) During her deposition, Ms. Lopez could not state what Mr. Edwards owes her now, but admitted that at one time her

agreement was for the house. [5] (*Id.* p. 136 - Lopez Dep. 184:1-4.) Crucially, Ms. Lopez admits she never received or expected any income from her work prior to when she was on payroll. (*Id.* p. 132 - Lopez Dep. 156:2-22.)

This testimony simply does not establish, or even reference, any real or even perceived employment relationship with Casper Trailer Sales, Inc. Moreover, there is no other testimony from Ms. Lopez, or any other evidence in the record, that an employment relationship existed. These assertions might conceivably create a question regarding the relationship with Mr. Edwards personally, but nothing more. Accordingly, Ms. Lopez cannot create a genuine issue of material fact as to whether Casper Trailer Sales, Inc. was her employer for the purposes of the FLSA prior to May 24, 2015.

### D.   Ms. Lopez's Alleged Employment With Carl Edwards Is Not Covered By The FLSA Under Individual Or Enterprise Coverage

Secondly, Ms. Lopez cannot meet her burden to prove enterprise coverage or individual coverage under the Act as it applies to her claim for pre-May 24, 2015 overtime and minimum wage. Ms. Lopez cannot meet her burden to prove enterprise coverage because Mr. Edwards is not a covered employer in his individual capacity under the Act. Ms. Lopez cannot meet her burden to prove individual coverage because her work did not involve interstate commerce.

### 3.   Burden of proof and elements.

It is Ms. Lopez's burden to show that she is entitled to the protections of the FLSA

---

[5] It is undisputed that there was no written contract for the property at 1208 Elko Street. Ms. Lopez has not brought a claim for enforcement of a contract. Of course, if she did, it would have been subject to a statue of frauds defense.

by asserting sufficient facts to plausibly state a claim that either she, individually, was engaged in commerce or that Mr. Edwards is an enterprise engaged in commerce. *Reagor v. Okmulgee Cty. Family Res. Ctr.*, 501 F. App'x 805, 808 (10th Cir. 2012).

For *enterprise* coverage, there must be an "[e]nterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s)(1) (internal quotation marks omitted). Such an enterprise must have "annual gross volume of sales made or business done" of $500,000 or more. *Id.* § 203(s)(1)(A)(i), (ii).

For *individual* coverage, the FLSA requires that the employee be "engaged in commerce." 29 U.S.C. § 203(s)(1)(A). The Tenth Circuit has interpreted this to mean that the employee "must directly participate in the actual movement of persons or things in interstate commerce." *Reagor*, 501 Fed. Appx. at 809 (internal quotation marks and citation omitted); *N.M. Pub. Serv. Co. v. Engel,* 145 F.2d 636, 638 (10th Cir.1944).

> To determine whether an employee is engaged in commerce we look at her activities, not the business of her employer. She must either work for a transportation or communication industry employer or regularly and recurrently use an instrument of interstate commerce, such as a telephone. Isolated or sporadic activities do not satisfy this requirement.

*Reagor*, 501 Fed. Appx. at 809; *see also Bowrin v. Catholic Guardian Soc'y,* 417 F.Supp.2d 449, 466 (S.D.N.Y.2006) (stating that de minimis interstate activities are not covered by FLSA); *Kitchings v. Fla. United Methodist Children's Home, Inc.,* 393 F.Supp.2d 1282, 1293 n. 26 (M.D.Fla.2005) ("For an employee to be engaged in commerce, a substantial part of the employee's work must be related to interstate commerce." (internal quotation marks omitted)).

### 4.  Enterprise coverage.

Ms. Lopez cannot establish a genuine dispute of material fact as to enterprise coverage for any alleged employment with Mr. Edwards prior to May 2015, because she has not pled nor established that he meets the definition of "enterprise" under the Act. In addition, Mr. Edwards did not act individually as a business enterprise engaged in interstate commerce, as required by 29 U.S.C. § 203(s)(1).   Mr. Edwards operates businesses through distinct legal entities that each have their own purpose, including Casper Trailer Sales, Inc. and SJE Holdings, Inc. a property holding company. (Movants' Appendix pp. 2-5 - Edwards Dep. 4:24-5:24, 5:6-10, 5:25-6:11, 11:17-20.)

Nor has Plaintiff sought to establish that Mr. Edwards personally made gross annual sales over $500,000. Plaintiff has instead relied on establishing Mr. Edward's liability under the FLSA through his management of Casper Trailer Sales, Inc. during the period when Ms. Lopez was on payroll at the company. This is not sufficient to establish enterprise coverage over an employer-employment relationship with Mr. Lopez alone.

### 5.   *Individual coverage.*

Ms. Lopez also cannot establish a genuine dispute as to whether she was engaged in interstate commerce prior to her employment with Casper Trailer Sales, Inc. According to her own testimony, Ms. Lopez's work for Mr. Edwards involved tasks that were limited to the local community, neighborhood, or business. Ms. Lopez's claimed work included mowing and mending fences, feeding pets, selling odds and ends at a flea market, and other property maintenance at Mr. Edwards' properties. (Movants' Appendix pp. 105-06 - Discovery Responses pp. 2-3.) These tasks clearly do not meet the FLSA's definition of interstate commerce.

With regard to Ms. Lopez's claimed work assisting Mr. Edwards in the shop, Ms. Lopez's specific tasks—not the work of the business itself—were primarily if not entirely local. Ms. Lopez's tasks of "open gates to sales lot, set up workstation, swept up shop, put tools away" (*id.*) do not constitute participating in interstate commerce. In addition, her alleged tasks of fixing and replacing parts on RVs does not rise to the level of "directly participating in the actual movement of persons or things in interstate commerce." *Cf. Reagor*, 501 Fed. Appx. at 809. Ms. Lopez has produced no specific evidence of how often she performed these tasks, and therefore has failed to produce any evidence they were a "substantial part of the employee's work." (*Id.* pp. 105-07 - Discovery Responses pp. 2-4); *cf. Kitchings,* 393 F.Supp.2d at 1293 n. 26.

Thus, even if Ms. Lopez could establish she performed work prior to becoming an employee, she can't demonstrate a material fact dispute over whether it rose to the level of interstate commerce.

## E.   *Section 8-4-109 Of The Colorado Wage Act Applies To Final Wages Only*

Ms. Lopez's second cause of action alleges a violation of the CWA, specifically C.R.S. § 8-4-109. It is Defendants' contention that, based on a recent District Court opinion authored by Judge William Martinez, the subject section is only applicable to payment of final wages. Judge Martinez certified a related question to the Colorado Supreme Court in that case, but unless the Colorado Supreme Court holds otherwise, Ms. Lopez's recovery under her second claim should be limited to nonpayment of final wages.

Section 109 of the CWA applies "[w]hen an interruption in the employer-employee

relationship by volition of the employer occurs" (generally, when the employer terminates

the employee) and makes "wages or compensation for labor or service earned, vested,

determinable, and unpaid at the time of such discharge...due and payable immediately."

C.R.S. § 8-4-109; *see also Hernandez v. Ray Domenico Farms, Inc*., 250 F. Supp. 3d

789, 791 (D. Colo. 2017). Section 103 of the CWA—which does not appear in Ms. Lopez's

Complaint—establishes that all wages and compensation, other than those mentioned in

Section 109, become due and payable ten days after each pay period. *Hernandez*, 250

F. Supp. 3d at 791.

        In *Hernandez*, Judge Martinez addressed whether Section 103 and Section 109

address distinct, non-overlapping forms of compensation.[6] Judge Martinez considered

the defendant's argument that "§ 109 pertains only to the sorts of payments that tend to

be due upon termination (e.g., hours worked since the close of the last pay period,

accrued vacation, unreimbursed travel expenses, etc.)." The Court stated that there are

at least three considerations that support this view, which can be summarized as follows:

First, Section 103's "other than" clause indicates that section 103 and section 109 cover

mutually exclusive forms of compensation. *Id*. at 798. Second, 2003 amendments to the

CWA appear to codify cases clarifying what an employee can claim under Section 109

relating entirely to types of compensation that tend to be payable upon termination. *Id.* at

798-800. Third, under the CWA, employers are required to keep records for three years,

---

[6] Judge Kane has separately held that Section 109 pertains only to undisputed but unpaid wages and granted a motion for summary judgment on that basis, because the wages sought were an area of factual and legal dispute. *Lozoya v. AllPhase Landscape Constr., Inc.*, No. 12-CV-1048-JLK, 2015 WL 1757080, at *2 (D. Colo. Apr. 15, 2015).

whereas an interpretation of Section 109 that covers all wages would create an indefinite lookback period apparently inconsistent with the recordkeeping period. *Id.* at 800.

Judge Martinez ultimately reserved ruling and *sua sponte* certified the following question to the Colorado Supreme Court:

> Does Colo. Rev. Stat. § 8–4–109(1)(a) permit a terminated employee to sue for wages or compensation that went unpaid at any time during the employee's employment, even when the statute of limitations (Colo. Rev. Stat. § 8–4–122) has run on the cause of action the employee could have brought for those unpaid wages under Colo. Rev. Stat. § 8–4–103(1)(a)?

*Id.* at 801-02. Implicit in this question is the narrower question of whether Section 109 covers wages that are distinct from those that Section 103 covers.

Based on the arguments summarized by Judge Martinez, incorporated herein by reference, Defendants respectfully seek a determination from this Court that Ms. Lopez's Section 109 claim is limited to unpaid final wages and penalties related to final wages only. To the extent that this Court will reserve ruling on this issue until the Colorado Supreme Court has acted, Defendants wish to preserve their argument and seek a stay of trial until this issue can be determined as a matter of law.

## IV.  CONCLUSION

Wherefore, and for the reasons stated above, Defendants respectfully request that the Court grant Summary Judgment in their favor on Ms. Lopez's Fair Labor Standards Act claim covering alleged employment prior to May 24, 2015, and for wages and penalties under the CWA except to the extent they are for final wages. Defendants respectfully request oral argument pursuant to D.C.COLO.LCivR 7.1(h).

Respectfully submitted this 17 day of January, 2017.

GODFREY | JOHNSON, P.C.

*/s/Lily E. Nierenberg*
Lily E. Nierenberg
Colorado Bar No. 45451
9557 S. Kingston Court
Englewood, Colorado 80112
Phone: (303) 228-0700
Fax: (303) 228-0701
Email: nierenberg@gojolaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on January 17, 2017, a true and correct copy of the foregoing MOTION FOR PARTIAL SUMMARY JUDGMENT was filed and served via ECF/PACER on all parties of record, as follows:

Donna Dell'Olio
Cornish & Dell'Olio
431 N. Cascade Avenue, Suite 1
Colorado Springs, CO 80903