```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
                Civil Action No. 17-CV-00045-KLM
_____
Plaintiff(s):
STEPHANIE LOPEZ, individually,


Defendant(s):
CARL EDWARDS, individually.
_____

Scheduling Attorney for the Plaintiff:
DONNA DELL'OLIO, ESQ.
Cornish & Dell'Olio, P.C.
431 North Cascade Avenue, Suite 1
Colorado Springs, Colorado  80903
(719) 475-1204
ddellolio@cornishanddellolio.com


For the Defendant:
LILY E. NIERENBERG, ESQ.
DLG Law Group, LLC
4100 East Mississippi Avenue, Suite 420
Denver, Colorado  80246
(303) 758-5100
lnierenberg@dlglaw.net


                  _____

                     DEPOSITION OF CARL EDWARDS
                      Wednesday, July 26, 2017
```



*Pelton Reporting Service, Inc.   (719) 578-2062*
*www.peltonreporting.com*

Lopez v. Edwards  CARL EDWARDS  July 26, 2017

70

1  and board?
2  **A   No.  I always paid her.  She had timecards.  Every**
3  **time she came in, she punched a card.  She'd leave --**
4  Q   Did you --
5  **A   -- punched in and punched out.**
6  Q   Did you ever tell anyone that she was working for
7  you in exchange for room and board?
8  **A   No, I did not because she never did work for me.**
9  MS. DELL'OLIO:  Let me get the next exhibit marked,
10 please.
11 (Deposition Exhibit 2 was marked.)
12 BY MS. DELL'OLIO:
13 Q   Are you looking at Exhibit 2?
14 **A   Yes.**
15 Q   Is that your signature?
16 **A   Yes.**
17 Q   And whose writing is that on the top of that note?
18 **A   Stephanie came to me, and she says, "Would you**
19 **write me a letter so we can get food stamps?"**
20 Q   No.  That's not my question.
21 **A   Oh, what was it?  I'm sorry.**
22 Q   Whose writing is on that letter?
23 **A   That's mine.  That's what I just said, yeah.**
24 Q   All the writing on this Exhibit 2 is yours?
25 **A   All but the stamp.  The writing is mine, yes.  I**



*Pelton Reporting Service, Inc.   (719) 578-2062*
*www.peltonreporting.com*

| Lopez v. Edwards | CARL EDWARDS | July 26, 2017 |
|---|---|---|

71

```
 1   remember that very well.  No.  Wait a minute.  The dates are
 2   not mine.  I didn't -- I didn't date them.
 3        Q    So February 21, 2017 --
 4        A    I did not put that.
 5        Q    -- that's not part of the document?
 6        A    No.  That's not my date.  I didn't date this down
 7   here, no.  I wrote this for her, and I signed it so she
 8   could acquire food stamps.
 9        Q    Okay.  So, for the record, the February 21, 2017,
10   is my office's stamp.  We stamp everything that comes into
11   our office.
12        A    It's not mine, no.  Correct.
13        Q    So February 21, 2017, which appears at the top of
14   the document, is not intended to be part of the document.  I
15   just want the record to be clear.
16        A    That's not mine, no.
17        Q    Where the date is 2010 -- 2/10/2012, that is not
18   your handwriting?
19        A    That is right.
20        Q    Do you have any reason to think that that's an
21   incorrect date?
22        A    Well, I don't know.  I don't know who put that
23   date on there.
24        Q    Okay.  Do you know when you wrote this document?
25        A    No.  I don't, no.
```



*Pelton Reporting Service, Inc.   (719) 578-2062*
*www.peltonreporting.com*

1     Q    All right.

2     A    **No.  Doesn't say down here, no.  I don't remember,**
3  **no.**

4     Q    Okay.  And you wrote this for her so she could get
5  food stamps?

6     A    **Yes.**

7     Q    Did you suggest to her that she apply for food
8  stamps?

9     A    **No, never did.  I think it's a crutch that anyone**
10 **acquires food stamps.**

11    Q    So you are against someone receiving --

12    A    **Yes.  I am against it.  Yes, I am.  Same as I am**
13 **with the liquor, same thing.**

14    Q    And the reason you're against food stamps is you
15 think people should work and earn money?

16    A    **Exactly.**

17    Q    And buy their own food?

18    A    **My whole theory, if you don't work, you don't eat.**

19    Q    Uh-huh.

20    A    **If they don't work, it's their tough luck.  I was**
21 **born and brought up the hard way.**

22    Q    Uh-huh.  So you have a high standard for honesty?

23    A    **Yes, I do, 100 percent.**

24    Q    Very high?

25    A    **Yes.**



```
 1      Q    But you are telling me that you agreed to make a
 2   false statement that you knew she was going to submit to the
 3   government?
 4      A    She came and asked me would I do it.  I said, yes,
 5   I will.  I didn't know --
 6      Q    Let me finish my question.
 7      A    Pardon.  Oh.
 8      Q    Your testimony is that you made a false written
 9   statement that you knew was going to be submitted to the
10   government?
11           MS. NIERENBERG:  I'm going to object.
12           And I'm going to counsel you not to answer that
13   question.
14           THE WITNESS:  Okay.
15   BY MS. DELL'OLIO:
16      Q    Why?  Why aren't you going to answer that
17   question?
18           MS. NIERENBERG:  I'm going to counsel you to use your
19   5th Amendment privilege to not answer that question.
20           THE WITNESS:  Okay.
21   BY MS. DELL'OLIO:
22      Q    Well, you've already said it's a false statement;
23   correct?
24           MS. NIERENBERG:  Objection.  Misstates prior
25   testimony.
```



```
 1    BY MS. DELL'OLIO:
 2        Q    Did you think it was true that Stephanie Lopez was
 3    working in exchange for room and board?
 4        A    Say that again.
 5        Q    Was she working in exchange for room and board in
 6    2012?
 7        A    No.  2012, no.  That's way back.
 8        Q    What did Stephanie say to you that got you to
 9    write or encourage you to write this letter or this note,
10    this dated note that's dated -- that's Exhibit No. 2?  What
11    did she say to you?
12        MS. NIERENBERG:  You can go ahead.
13        THE WITNESS:  She just came to me, and she says "I'm
14    applying for food stamps.  Would you write this for me?"
15    She told me what to write, and unbeknownst of what went on,
16    I guess, she got food stamps.  I don't know.
17    BY MS. DELL'OLIO:
18        Q    Well, who do you get food stamps from?
19        A    The state or the city.  I am not sure where she
20    got them, no.
21        MS. DELL'OLIO:  Mark the next one.
22        (Deposition Exhibit 3 was marked.)
23    BY MS. DELL'OLIO:
24        Q    This would be Exhibit No. 3 in front of you.
25        A    Uh-huh.
```



| | | |
|---|---|---|
| Lopez v. Edwards | CARL EDWARDS | July 26, 2017 |

75

```
 1     Q    Is that your signature?
 2     A    I don't think it is.
 3     Q    Why don't you think that's your signature?
 4     A    Because I didn't see this document.  I didn't see
 5    the writing, and I did not sign it.  No, I've never seen the
 6    paper until my attorney showed me yesterday.
 7     Q    So it's your testimony that this document is a
 8    forgery?
 9     A    Very possible, yes.
10     Q    And whose handwriting is at the top of this
11    document?
12     A    I think it's Stephanie's.  I'm not sure.
13     Q    Is any of the writing on this document yours?
14     A    I don't think it's my signature.  That's the only
15    writing that you are questioning, I think.
16     Q    Why don't you think this is your signature?
17     A    Because I have never seen that letter before in my
18    life.
19     Q    Have you retained a document examiner for this
20    case?
21     A    A what?
22     Q    Have you hired a document examiner for this case?
23     A    What's that?
24     Q    An expert in handwriting analysis.
25     A    No.  I just seen this letter yesterday.  That's
```



*Pelton Reporting Service, Inc.   (719) 578-2062*
*www.peltonreporting.com*

CARL EDWARDS

Lopez v. Edwards											July 26, 2017

76

```
 1   all.
 2       Q    Does this look like your hand --
 3       A    It looks like --
 4       Q    -- looks like signature?
 5       A    It's -- it looks like it, but it's on there wrong,
 6   either photostatic on there wrong or signed wrongly, but
 7   it's not -- I did not see that letter, no.  Therefore, I
 8   wouldn't sign a blank piece of paper.
 9       Q    Have you ever known Stephanie to forge your
10   signature?
11       A    I was never asked, and I've never questioned her,
12   no.
13       Q    Did it ever come to your attention after the fact
14   she forged your signature?
15       A    I don't know, no.
16       MS. DELL'OLIO:  Can you -- this will be Exhibit No. 5.
17       MS. NIERENBERG:  We are on 4.
18       MS. DELL'OLIO:  4.  My apologies.
19       (Deposition Exhibit 4 was marked.)
20   BY MS. DELL'OLIO:
21       Q    Looking at Exhibit No. 4, is this your signature?
22       A    Yes.  But I'm not -- never seen that paper either.
23   These are all new to me.  My attorney gave it to me
24   yesterday.  I says, no, I've never seen them before.
25       Q    Is any of the writing on this page yours?
```



*Pelton Reporting Service, Inc.   (719) 578-2062*
*www.peltonreporting.com*

|  | CARL EDWARDS |  |
|---|---|---|
| Lopez v. Edwards |  | July 26, 2017 |

77

```
 1     A    No.
 2     Q    Other than the signature?
 3     A    No.
 4     Q    Is the signature yours?
 5     A    It appears to be, but I did not put my signature
 6   on a blank piece of paper, no.  I know better than that.
 7     Q    Did Stephanie ever ask you, other than the first
 8   time, to write a note for her so she could get food stamps?
 9     A    Other than the first time, that's the only one I
10   recall, yes.
11     Q    So she never came to you and asked and had you say
12   no?
13     A    No.
14     Q    That never happened?
15     A    Huh-uh.  I think she'd know better.
16     Q    And why would she know better?
17     A    She knows me personally.
18     Q    That you're too honest to write a false
19   statement --
20     A    Pretty well, yes.
21     Q    -- to get food stamps?
22     A    Yes.
23     Q    But you did it once?
24     A    If she came in -- if I'm busy at the shop, and I'm
25   in my office, and she said, "Here.  I am trying for food
```



78

1  stamps.  Would you write me a letter?," which apparently I
2  did.
3        MS. DELL'OLIO:  Next numbered exhibit, this would be 5.
4        (Deposition Exhibit 5 was marked.)
5  BY MS. DELL'OLIO:
6     Q    Is this your signature on Exhibit 5?
7     A    **Same thing the previous.**
8     Q    Well, does it appear to be your signature?
9     A    **It looks to me, but I know I didn't sign it.**
10    Q    Do you see anything about the signature that would
11 make you believe that it wasn't your signature?
12    A    **I think these signatures were photostatic on the**
13 **paper.  The machines nowadays can be done very easily.**
14    Q    Is there any writing on this document No. 5 that
15 you acknowledge to be your handwriting?
16    A    **No, not even the phone number or the JDL.  I don't**
17 **think that's my writing either.  The JDL could be, but I am**
18 **not sure, and that could have been photostatic also.  I am**
19 **not sure on that.  And there's another one that says**
20 **"Stephanie Lopez" something.  I don't know what that means.**
21    Q    Okay.  So the "care of JDL Trailer Sales," that
22 does look like your writing?
23    A    **I would never -- I would never sign my name and**
24 **put that.  Never in my life.**
25    Q    But it does appear to be your handwriting?



CARL EDWARDS
Lopez v. Edwards                                                                July 26, 2017

79

| | | |
|---|---|---|
| 1 | A | Not the writing.  Now, the printing. |
| 2 | Q | The printing? |
| 3 | A | The printing, it looks -- "sales" looks like my printing. |
| 5 | Q | Okay.  And that -- so that line that we're talking about is "C/O JDL TLR Sales"? |
| 7 | A | Trailer Sales, I presume, yes. |
| 8 | Q | And is that the way you -- |
| 9 | A | I wouldn't -- I wouldn't put TLR, no. |
| 10 | Q | But it does appear to be your printing? |
| 11 | A | It could be.  It looks like it, yes, but it could be photostatic also.  But I would not put TLR Sales.  I've never done that in my life. |
| 14 | Q | What about the telephone number (719) 2- -- |
| 15 | A | Where is that? |
| 16 | Q | Under your signature. |
| 17 | A | 242-6- -- that's my cell phone number. |
| 18 | Q | Is that in your handwriting? |
| 19 | A | No. |
| 20 | Q | But that is your cell phone number? |
| 21 | A | That's my cell phone number, yeah.  And it says 2734 Lake Avenue, Pueblo, Colorado.  That's not my writing either, no.  This, I'd never seen it before until yesterday. |
| 24 | Q | How did you believe Stephanie was supporting herself between the time she moved into the farmhouse and |



JDL Trailer Sales
2734 Lake Avenue
Pueblo, CO 81004
Parts/Service 564-8056
Sales (719) 561-0421

FEB 2 1 2017

To whome it may concern

Ms Stephanie Lopez works for me for Room and Board.

2/10/2012

Carl Edwards

#(719) 242-6212



LOPEZ0005

I Stephanie Lopez work for room and board for Carl Edwards doing farmwork feeding & maintaining livestock & mucking stalls, mending fep feed I work 90 hours per week every week sence September 1st

(719) 242-6212    9-20-13

*Carl Edwards*

RECEIVED
SEP 2 0 2013
DEPARTMENT OF SOCIAL SERVICES
PUEBLO COUNTY COLORADO

EXHIBIT 3
WIT: C. Edwards
DATE: 7-26-17
Pelton Reporting Service

LOPEZ0006

To whom it may concern I
Stephanie Lopez have no changes
to report other then a mailing address
change from 1208 Elko to 2734 LAKE Ave
                           Pueblo CO 81004     Pueblo CO 81004
I still work for Carl Edwards
at SDF 6 days a week doing clean up
and Pit crew.
Stephanie Lopez 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    2/18/14
2734 LAKE Ave
Pueblo Co 81004    Boss Carl Edwards

REC'D
FEB 19 2014
DEPARTMENT OF SOCIAL SERVICES
PUEBLO COUNTY COLORADO

RECEIVED
FEB 19 2014
DEPARTMENT OF SOCIAL SERVICES
PUEBLO COUNTY COLORADO


EXHIBIT 4
WIT: C Edwards
DATE: 7-20-17
Pelton Reporting Service

LOPEZ0007

9-8-14

I Stephanie Lopez work for Carl Edwards in exchange I learn the knowledge and experience I need for the type of business I'm interested in building. I work 38 hours and up. I've worked for Carl Edwards the begining of 2013. 1229 Van Buren  Stephanie Lopez

2734 LAKE Ave. Pueblo Co
81004

Carl Edwards

(719) 242-6212

c/o J.D.L TLR SALES

Stephanie Lopez

RECEIVED
SEP 08 2014
DEPARTMENT OF SOCIAL SERVICES
PUEBLO COUNTY, COLORADO


EXHIBIT 5
WIT: C Edward
DATE: 7-26-17
Pelton Reporting Service

LOPEZ0008