**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 17-cv-00045-CMA-KLM

STEPHANIE LOPEZ,

    Plaintiff,

v.

CARL EDWARDS, individually, and
CASPER TRAILER SALES, INC., a Colorado corporation,

    Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Defendants Carl Edwards and Casper Trailer Sales, Inc.'s Motion for Partial Summary Judgment. (Doc. # 65.) Defendants argue that (1) Plaintiff Stephanie Lopez's claims for unpaid wages prior to May 24, 2015, are not covered under the Fair Labor Standard Act ("FLSA"), and (2) Plaintiff's claim for unpaid wages under the Colorado Wage Act ("CWA") must be limited to recovery of final wages. (*Id.*) Defendants request that the Court therefore enter summary judgment on Plaintiff's claims for unpaid wages prior to May 24, 2015, and limit her recovery under the CWA. (*Id.*) For the reasons stated below, the Court denies Defendants' Motion.

## I. BACKGROUND

**A. UNDERLYING FACTS**

Casper Trailer Sales, Inc. ("Casper") is a Colorado corporation, doing business as JDL Trailer Sales. (Doc. # 60 at ¶ 6.) Defendant Carl Edwards ("Edwards") is the owner and manager of Casper Trailer Sales, Inc. (*Id.* at ¶ 8.) Defendants and Plaintiff agree that at all times relevant to the Complaint, Edwards acted directly and indirectly in the interests of the employer in relation to Plaintiff by setting her rate of pay, the method of compensation, and determining her hours of work. (*Id.* at ¶ 9.)

Plaintiff alleges that she began working for Casper in 2009 by cleaning the shop. (*Id.* at ¶ 13.) She asserts that she learned the trade of an RV technician by watching others and that she worked as an RV technician for most of her employment with Casper. (*Id.* at ¶ 15.) Plaintiff claims that she worked without cash wages from 2009 until 2015 in reliance upon Edwards' promise to transfer title to a home to her in exchange for her work. (*Id.* at ¶ 16.) She also states that she received room and board in exchange for her work during part of this time period. (*Id.*) She contends that throughout most of her employment, she worked no fewer than ten hours a day and as many as seventy hours a week. (*Id.* at ¶ 20.)

Plaintiff received her first paycheck from Casper in May 2015. (Doc. # 68 at 5.) Plaintiff alleges that she was not paid minimum wage for the hours she worked in 2013 and 2014, nor was she paid one and one-half times minimum wage for hours worked over forty hours in a single work week during this time. (Doc. # 60 at ¶ 22.) She also alleges she was paid for some, but not all, of her hours worked in 2015 and 2016. (*Id.* at

¶¶ 23, 24.) Plaintiff terminated her employment on April 20, 2016, because she was allegedly harassed at work and because Edwards refused to pay her. (*Id.* at ¶¶ 48, 49.) On November 11, 2016, Plaintiff demanded from Defendants payment of wages owed. (*Id.* at ¶ 59.)

Defendants contest the majority of Plaintiff's allegations. (Doc. # 62.) Defendants refute Plaintiff's statement that she began work for Casper in 2009. (*Id.* at ¶ 13.) Defendants also assert that Plaintiff worked only as part of the pit crew during her employment, and deny that Edwards ever promised to transfer title to a house to Plaintiff in exchange for her work. (*Id.* at ¶¶ 14–16.) Most relevant here, Defendants deny all allegations regarding any hours Plaintiff worked that were not compensated. (*Id.* at ¶¶ 13–61.)

**B. PROCEDURAL HISTORY AND DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff commenced this suit on January 4, 2017. (Doc. # 1.) She filed an Amended Complaint on September 18, 2017 (Doc. # 36) and a Second Amended Complaint on November 30, 2017 (Doc. # 60). Plaintiff asserts three claims against Defendants: (1) pursuant to 29 U.S.C. § 206, Defendants' failure to pay Plaintiff minimum wages for all weeks worked in 2014, and some weeks in 2015 and 2016, is in violation of the FLSA; (2) pursuant to 29 U.S.C. § 207, Defendants' failure to pay Plaintiff overtime wages constitutes an additional violation of the FLSA; and (3) pursuant to Colo. Rev. Stat. § 8-4-109, Defendants' failure to pay Plaintiff's earned, vested, and determinable wages is in violation of the CWA. (*Id.* at 1.)

On January 17, 2018, Defendants filed a Motion for Partial Summary Judgment. (Doc. # 65.) Defendants' Motion seeks to separate Plaintiff's claims into two separate time periods: prior to May 24, 2015, when Plaintiff was not a payroll employee of Casper, and after May 24, 2015, when Plaintiff was a payroll employee of the company. (*Id.* at 2.) Defendants argue that because Plaintiff cannot produce records of her employment with Casper prior to May 24, 2015, her claim for employment can only extend to Edwards individually, not his company. (*Id.*) Thus, Defendants allege Plaintiff's claims during this time period are not covered under the FLSA because the FLSA only covers employees engaged in interstate commerce. (*Id.* at 2–3.) Because Edwards, as an individual, is not an employer as defined by the FLSA, Plaintiff's employee-employer relationship with Edwards does not implicate interstate commerce. (*Id.* at 3.)

In addition, Defendants seek partial summary judgment on Plaintiff's claim for wages owed under the CWA. (*Id.*) Defendants assert that under Section 109 of the CWA, Plaintiff's claim is limited to only unpaid final wages and penalties related to final wages. (*Id.* at 20.) Defendants' interpretation of Section 109 of the CWA relies upon Judge Martinez's recent opinion and certified question to the Colorado Supreme Court, which asks:

> Does Colo. Rev. Stat. § 8-4-109(1)(a) permit a terminated employee to sue for wages or compensation that went unpaid at any time during the employee's employment, even when the statute of limitations (Colo. Rev.

4

Stat. § 8-4-122[1]) has run on the cause of action the employee could have brought for those unpaid wages under Colo. Rev. Stat. § 8-4-103(1)(a)?

*Hernandez v. Ray Domenico Farms, Inc.*, 250 F. Supp. 3d 789, 801–02 (D. Colo. 2017). In *Hernandez*, Judge Martinez considered the defendant's argument that Section 109 "pertains only to the sorts of payments that tend to be due upon termination (e.g., hours worked since the close of the last pay period, accrued vacation, unreimbursed travel expenses, etc.)." *Id.* at 798. Defendants in the case now before the Court similarly request that the Court limit Plaintiff's recovery to unpaid final wages unless or until the Colorado Supreme Court rules otherwise. (Doc. # 65 at 3.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id*. However, conclusory statements based merely on conjecture,

---

[1] Under Colo. Rev. Stat. § 8-4-122, the statute of limitations requires all actions to be commenced within two years after the cause of action accrues, or within three years if the violation is willful.

speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. In addition, answers to interrogatories may properly be considered by courts in ruling on a motion for summary judgment. *Champlin v. Oklahoma Furniture Mfg. Co.*, 269 F.2d 918, 920 (10th Cir. 1959); Fed. R. Civ. P. 56(c).

## III. ANALYSIS

### A. FLSA CLAIMS

The Court begins by addressing Defendants' contention that Plaintiff was not an employee of Casper prior to May 24, 2015. Defendants argue that the Plaintiff's FLSA Claims should be dismissed because (1) with respect to Casper, Plaintiff does not adequately demonstrate that she had an employment relationship prior to May 24, 2015; and (2) Plaintiff fails to meet her burden to prove enterprise coverage or individual coverage under the Act prior to May 24, 2015. (Doc. # 65.)

Under the FLSA, an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). An "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA "defines the verb 'employ' expansively to mean, 'suffer or permit to work.'" *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)). Consistent with these broad definitions, "[t]he Supreme Court has instructed courts to construe the terms 'employer' and 'employee' expansively under the FLSA." *See id.*; *Rutherford Ford Corp. v. McComb*, 331 U.S. 722, 730 (1947).

Where the employer-employee relationship is in question, courts are to consider the "economic realities" of the relationship, grounding the analysis in "economic reality rather than technical concepts." *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961). Applying the economic realities test, courts consider "whether the alleged employer (1) had the power to hire and fire the employee, (2) supervised and controlled the employee's work schedule or conditions of employment, (3) determined the rate and

7

method of payment, and (4) maintained employment records." *Schindler v. Whiting Petroleum Corp.*, No. 17-CV-1051-WJM-NYW, 2017 WL 5969814, at *3 (D. Colo. Dec. 1, 2017). "No one of the four factors standing alone is dispositive. Instead, the [. . .] test encompasses the totality of the circumstances." *Id.*; *Goldberg*, 366 U.S. at 33; *Rutherford*, 331 U.S. at 730.

Plaintiff contends that there is a genuine dispute of fact as to whether Plaintiff was employed by Casper prior to May 24, 2015. (Doc. # 68.) In Plaintiff's Interrogatory Number 1, when asked to describe her duties "as an employee of JDL" between January 4, 2014 and May 24, 2015, she stated:

> I typically arrived at work at 7:30, no later than 7:45, to open gates to sales lot, set up workstation, swept up shop, put tools away worked on tasks assigned to me by Mr. Edwards from changing out vents, fans, shrouds, skylight windows, light bulbs, lenses, repairing wires, replacing wires, replacing water pumps, water lines, replacing gaskets on septic, clean out wax seals and toilets, removing old speakers and TVs, as well as installing new speakers and TVs, repairing damaged roofs, replacing rubber roofs, cosmetic repair two framework, winterizing/de-winterizing tin work, repair and replace customizing refurbishing units, even worked on several units that had been condemned or totaled out by customers. As well as maintaining Mr. Edwards many properties which included mending fences, mowing down weeds, picking up debris, feeding his dogs, Properties maintained: one on Acero, one on California Street, one on Poplar Street and three on Lake Avenue, as well as the property on Elko. I moved trailers with the forklift, ran errands, got parts from other locations. Picked up propane, performed a perimeter check when asked to do so. I worked until the shop closed and sometimes later. I worked with Mr. Edwards on Saturdays I did whatever I was asked to do. I would go to the flea market and sell Mr. Edwards property for him on weekends.

(*Id.* at 10.) Here, Plaintiff's reference to the "shop" is in reference to JDL Trailer Sales. (*Id.*) In addition to Plaintiff's interrogatories, Plaintiff seeks to support her claim that she worked for Casper prior to May 24, 2015, by using several of Edwards' documented

statements. (*Id.*) The first statement says "[Plaintiff] works for me" and is stamped "JDL Trailer Sales . . . ." (Doc. # 68-1 at 2 (date omitted)). A second statement dated February 18, 2014, written by Plaintiff and signed by Edwards, states "I still work for Carl Edwards at JDL 6 days a week doing clean up and Pit crew." (*Id.* at 3.) Plaintiff argues that these statements present a genuine issue of fact regarding whether Plaintiff was employed by JDL Trailer Sales, in association with Casper, prior to May 24, 2015. (Doc. # 68 at 11.) [2]

Plaintiff also disputes Defendants' assertion that she was not employed by Casper, an enterprise engaged in commerce. Casper is certainly an enterprise engaged in commerce. (Doc. # 62 at ¶ 7.) Its gross receipts are in excess of $500,000 and it has and had "employees handling, selling, or otherwise working on goods or materials that have been moved in . . . commerce . . . ." *See* 28 U.S.C. § 203(s)(1)(A)(1); *see also* (Doc. # 62 at ¶ 7.) As previously discussed, Plaintiff has presented evidence to dispute Defendants' assertion that May 24, 2015, is the date she was hired by. *See* (Doc. # 68.)

This Court finds that there is undoubtedly a genuine dispute regarding whether Plaintiff was employed by Casper prior to the receipt of Plaintiff's first cash payment for wages. The parties agree that Plaintiff's claim turns on this fact. *See* (Doc. ## 65, 68.) Plaintiff asserts that the above evidence provides sufficient legal grounds to deny Defendant's Motion. (Doc. # 68 at 2.) The Court agrees. *See Champlin*, 269 at 920; Fed. R. Civ. P. 56(c). Thus, Plaintiff has set forth "specific facts showing that there is a

---

[2] Defendants argue that Plaintiff's documented statements amount to unauthenticated and inadmissible hearsay. (Doc. # 72 at 4.) Although the Court makes no ruling on this issue at this time because Defendants have not filed an appropriate motion to exclude evidence, the Court would note that these statements appear to be non-hearsay pursuant to Fed. R. Evid. 801(d)(2).

genuine issue for trial." See *Anderson*, 477 U.S. at 256. This evidence is significant probative evidence that may support a finding that Plaintiff was denied wages and thus, is entitled to a verdict in her favor. See *Jaramillo*, 680 F.3d at 1269. Defendant is not entitled to judgment as a matter of law that Plaintiff was not an employee of Casper prior to May 24, 2015.

**B.     CWA CLAIM**

Plaintiff's Second Amended Complaint includes a claim for all unpaid wages under the CWA from January 4, 2014, until the termination of her employment. (Doc. # 68 at 19.) Defendants contend that Plaintiff's cause of action under Colo. Rev. Stat. § 8-4-109 applies to final wages only. (Doc. # 65 at 18.) Defendants primarily base their argument upon a recent District Court opinion authored by Judge Martinez. (*Id.*); *see Hernandez* 250 F. Supp. 3d at 801–02. In *Hernandez*, Judge Martinez issued a certified question to the Colorado Supreme Court, requesting clarification between the overlap of covered wages in Section 103 and Section 109 of the CWA, where Section 109 in effect revives all past actionable claims upon an employee's termination. 250 F. Supp. 3d at 797–98.

Section 109 of the CWA applies "[w]hen an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately." Colo. Rev. Stat. § 8-4-109(a). Pursuant to Section 122, the employee has two years from that date to bring a cause of action for

non-willful violations, and three years from that date for willful violations. Colo. Rev. Stat. § 8-4-122.

Defendants raise issue with Plaintiff's claim for all unpaid wages under Section 109 because, they assert, Section 103 of the CWA "establishes that all wages and compensation, other than those mentioned in Section 109, become due and payable ten days after each pay period." Colo. Rev. Stat. § 8-4-103; *see* (Doc. # 65 at 19.)

Plaintiff asserts that Judge Martinez's certified question does not pertain to Plaintiff's CWA claim because the statute of limitations for Plaintiff's Section 109 claim has not expired. (Doc. # 68 at 20.) Plaintiff made a demand for payment of wages pursuant to Section 109 on November 11, 2016. (Doc. # 60 at ¶ 59.); *see* Colo. Rev. Stat. § 8-4-109(3). The demand included unpaid wages for all hours worked in 2013 and 2014, as well as unpaid wages for some hours worked in 2015 and 2016. (Doc. # 60 at ¶¶ 22, 23.) When Plaintiff's demand for unpaid wages remained unanswered by Defendants, Plaintiff filed suit on January 4, 2017. (Doc. # 1.)

At the outset, the Court observes that Plaintiff has not expressly stated Defendants *willfully* denied her payment of unpaid wages. However, reading Plaintiff's Second Amended Complaint (Doc. # 60) and Response to Defendant's Motion for Summary Judgment (Doc. # 68) in the light most favorable to Plaintiff, the Court interprets Plaintiff's Section 109 claim to imply a willful violation. Thus, her claims for unpaid wages dating back to 2013 would satisfy the three year statute of limitations for actionable claims. *See* Colo. Rev. Stat. § 8-4-122.

Judge Martinez's certified question requests clarification regarding the scope of unpaid wages under Section 109 in relation to Section 103. *Hernandez*, 250 F. Supp. 3d at 798. The Colorado Supreme Court's determination of the question does not pertain to the instant case because the statute of limitations has not run for Plaintiff's Section 109 claim. Colo. Rev. Stat. § 8-4-122. While Judge Martinez's opinion regarding the overlap between Section 103 and Section 109 is pertinent, it is not binding on this Court.

Therefore, this Court will not limit Plaintiff's recovery under Section 109 to final wages. The plain language of Section 109 allows for recovery of all "earned, vested, determinable, and unpaid" wages.[3] Colo. Rev. Stat. § 8-4-109. It is Plaintiff's burden to prove the necessary elements of her claim. Of which, a jury could find in Plaintiff's favor. *See Jaramillo*, 680 F.3d at 1269. The Court, therefore, denies Defendants' Motion for Partial Summary Judgment. (Doc. # 65.)

## IV. CONCLUSION

Based on the foregoing, the Court DENIES Defendants' Motion for Partial Summary Judgment (Doc. # 65).

DATED: May 15, 2018

BY THE COURT:

*Christine M Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[3] The "determinable" requirement was added by the Colorado legislature in 2003 to protect claims for wages that cannot be ascertained. *Norwood v. WBS, Inc.*, 15-cv-0622, ECF No. 85 at 10 (Nov. 14, 2016) (discussing the legislative history of the statute).