# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00045-KLM

STEPHANIE LOPEZ, individually,

    Plaintiff,

v.

CARL EDWARDS, individually, and
CASPER TRAILER SALES, INC., a Colorado Corporation,

    Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE
## THE EXPERT HANDWRITING TESTIMONY OF WENDY CARLSON

COMES NOW, the Plaintiff, Stephanie Lopez ("Plaintiff" or "Ms. Lopez"), by and through undersigned counsel, respectfully submits her response memorandum in opposition to Defendants' Motion to Exclude the Expert Handwriting Testimony of Wendy Carlson (hereinafter "Defendants' Motion" or "Def. Mot."). In support, Plaintiff states as follows.

## INTRODUCTION

There are two central issues in this wage and overtime case: (1) the duration of Plaintiff's employment by Defendants; and (2) whether Defendants paid Plaintiff the wages to which she was entitled under state and federal laws while she was employed by Defendants. Plaintiff will testify that she was employed by Defendants from 2009 to 2016; Defendants claim that Plaintiff was only employed from May 2015 to March 2016. Def's Answer to Sec. Amend. Complaint, Docket No. 62.

Between February 10, 2012, and November 15, 2016, Defendant Carl Edwards signed five handwritten notes certifying that Plaintiff was employed by Defendants. *See* Def. Ex. A.[1] Plaintiff disclosed these handwritten notes in support of her claim pursuant to F.R.C.P. 26(a). At his deposition, Defendant Edwards admitted to signing the 2012 handwritten note, but denied signing the other four notes. Def. Mot., p. 3. To impeach Defendant Edwards, Plaintiff retained Wendy Carlson ("Ms. Carlson"), a forensic handwriting and document examiner, to provide an expert opinion on the authorship of the signatures on the four questioned notes. Def. Ex. F.

Ms. Carlson conducted a comprehensive examination of the four questioned signatures using a methodology known as "ACE," and concluded that Defendant Edwards did in fact sign the four notes in question. *Id*. at 7. Defendants then retained their own purported handwriting expert, Jacqueline A. Joseph ("Ms. Joseph"). Def. Ex. I. Ms. Joseph prepared a report in which she offered no opinion about who wrote the questioned signatures, other than to state that Plaintiff "cannot be ruled out as having written one or more of the four questioned 'Carl Edwards' signatures." *Id*. at 3. The only basis that Ms. Joseph offered for this opinion was the fact that Defendants' counsel represented to Ms. Joseph that the questioned signatures were written by Plaintiff. *Id*.

Defendants seek to exclude Ms. Carlson's testimony and opinions in their entirety. Defendants' Motion is a rehashing of arguments raised and rejected by Judge William J. Martinez in *Crew Tile Distribution v. Porcelanosa L.A., Inc.*, where one party also filed a motion to exclude the expert testimony of Ms. Carlson. No. 13-cv-3206-WJM-KMT, Docket No. 167 (D. Colo. Dec. 30, 2015) (hereinafter "*Crew Tile*"). Following an extensive pretrial analysis, Judge

---

[1] For the sake of simplicity, Plaintiff refers throughout this response to the exhibits attached to Defendants' Motion using the nomenclature "Def. Ex. _."

Martinez denied the motion and permitted Ms. Carlson to present her expert opinion testimony in its entirety. *Crew Tile,* Docket No. 237 (D. Colo. Sept. 12, 2016) (order denying Plaintiff's motion to exclude). For the reasons relied on by Judge Martinez, and for all of the additional reasons discussed below, this Court should deny Defendants' Motion.

Plaintiff and Defendants agree that an evidentiary hearing is not necessary to resolve Defendant's Motion. Def. Mot., p. 4, Fn. 1. However, if the Court determines that an evidentiary hearing is necessary, Plaintiff requests that the hearing be held on the same day of trial that Plaintiff calls Ms. Carlson to testify. This will eliminate the unnecessary expense of producing Ms. Carlson twice. This request is consistent with F.R.C.P. 1, which emphasizes the Court's obligation to secure "the just, speedy, and inexpensive determination of every action and proceeding."

## **LEGAL STANDARD**

Fed. R. Evid. 702 ("Rule 702") imposes on a district court a gatekeeper obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "Rule 702, both before and after *Daubert*, was intended to **relax** traditional barriers to admission of expert opinion testimony." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1082-83 (D. Colo. 2006) (emphasis added).

Rule 702 provides that a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" may testify if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

3

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of a challenged expert must demonstrate by a preponderance of the evidence that the testimony and opinion are admissible. *U.S. v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

In determining whether expert testimony is admissible, the Court generally employs a three-step process. *Ark. River Power Auth. v. Babcock & Wilcox Power Co.*, 2016 U.S. Dist. LEXIS 194059, at *5 (D. Colo. Oct. 28, 2016). First, it must determine whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *Nacchio*, 555 F.3d at 1241. Second, if the expert is sufficiently qualified, the Court must determine whether the proposed testimony is sufficiently "relevant to the task at hand," such that it "logically advances a material aspect of the case." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n.2 (10th Cir. 2005). Third, the Court examines whether the expert's opinion "has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Id.* (quoting *Daubert*, 509 U.S. at 592). Guided by these principles, courts have "broad discretion" to evaluate whether an expert is helpful, qualified, and reliable under F.R.E. 702. *United States v. Velarde*, 214 F.3d 1204, 1208-09 (10th Cir. 2000).

## LEGAL ARGUMENT

### MS. CARLSON'S EXPERT OPINION TESTIMONY MEETS ALL OF THE REQUIREMENTS OF RULE 702, AND IS THEREFORE ADMISSIBLE.

Ms. Carlson's expert opinion testimony is reliable because, among other things, it is the product of reliable principles and methods and is the result of a reliable application of principles

and methods to the facts of the case.[2] In addition, Ms. Carlson's expert opinion testimony is relevant because it will help the trier of fact to understand the evidence or to determine a fact in issue. Her testimony therefore satisfies all of Rule 702's requirements and should be admitted.

I. MS. CARLSON'S EXPERT OPINION TESTIMONY IS RELIABLE.

    A. **Ms. Carlson's Expert Opinion Testimony is the Product of Reliable Principles and Methods.**

Trial judges have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Nacchio*, 555 F.3d at 1245. Several factors may be considered by the trial court in assessing the reliability of proposed expert testimony. The "*Daubert* factors" that may be considered are: (1) whether the theory or technique employed by the expert in formulating his expert opinion can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error; (4) whether standards control operation of the technique; and (5) whether the theory or technique is generally accepted within the relevant professional community. *Kumho Tire Co.*, 526 U.S. at 149-50 (quoting *Daubert*, 509 U.S. at 592-94). The Tenth Circuit has cautioned, however, that "the reliability criteria enunciated in *Daubert* are not to be applied woodenly in all circumstances." *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009).

In the instant case, Ms. Carlson employed a scientific methodology known as "ACE" in reaching her conclusions. Def. Ex. F. "ACE" is an acronym for a three step process: Analyze,

---

[2] Defendants do not question Ms. Carlson's qualifications, nor do they challenge her expertise in the area of forensic document examination. Similarly, Defendants do not dispute that Ms. Carlson's opinion is based on sufficient facts and data. Thus, there is no dispute regarding the first and third requirements of Rule 702. Accordingly, these elements will not be discussed herein.

5

Compare, and Evaluate. *Id*. at 6. This procedure (and its acronym) is also used in other types of forensic analysis, including fingerprint analysis. *See United States v. Baines*, 573 F.3d 979, 983 (10th Cir. 2009). The ACE method is identical to the more-commonly discussed ACE-V method, aside from the fact that it does not include the fourth step ("V") of independent verification.

The Tenth Circuit has found that the ACE and ACE-V methodologies are sufficiently reliable under Rule 702 and *Daubert*. *See, e.g., United States v. Avitia-Guillen*, 680 F.3d 1253, 1260 (10th Cir. 2012) ("Fingerprint comparison is a well-established method of identifying persons, and one we have upheld against a *Daubert* challenge."); *Baines,* 573 F.3d at 987 (holding that fingerprint analyses is sufficiently reliable to be admissible after considering, among other things, the potential error rate of the ACE-V fingerprint method); *United States v. Casaus*, No. 14-cr-00136-CMA-09, 2017 U.S. Dist. LEXIS 212945, at *1 (D. Colo. Dec. 29, 2017) (finding ACE-V method, used in context of fingerprint examination, to be reliable); *United States v. Myers*, No. 12-CR-0196-02-CVE, 2012 U.S. Dist. LEXIS 174916, at *14 (N.D. Okla. Dec. 11, 2012) (finding that the ACE-V method is reliable); *United States v. Gutierrez-Castro*, 805 F. Supp. 2d 1218, 1231 (D.N.M. 2011) (finding the ACE-V methodology sufficiently reliable to be admissible); *Crew Tile*, Docket No. 237 at 4-23 (concluding, after an extensive pretrial analysis, that Ms. Carlson's use of the ACE method constituted a reliable methodology under Rule 702).

Of particular note is the decision of the Western District Court of Oklahoma in *Legacy Vision, Ltd. Liab. Co. v. Yeamans*, where the Court considered the reliability of the ACE-V method as applied to handwriting analysis. No. CIV-04-1320-M, 2005 U.S. Dist. LEXIS 46890, at *13 (W.D. Okla. June 6, 2005) (hereinafter "*Legacy Vision*"). After thoroughly analyzing all five *Daubert* factors and determining that four of the five factors supported such a conclusion, the Court

in *Legacy Vision* held that the ACE-V method is an established and reliable field of technical expertise. 2005 U.S. Dist. LEXIS 46890, at *10. Specifically, the Court found that: (1) questioned document analysis "naturally lends itself to testing, both with respect to process and results," and has, in fact, been tested; (2) the "'Ace V' method has been subjected to significant peer review;" (3) "a set of established standards controls the operation of the 'Ace V' method;" and (4) the "'Ace V'" method is generally accepted in the relevant professional communities, those consisting of forensic scientists and law enforcement officers, including federal and state prosecutors." *Id*. at *10-16.

Although *Legacy Vision* is not binding on this Court, it is instructive and its rationale and conclusions should be adopted by this Court because, among other reasons: (1) it is consistent with the Tenth Circuit decisions regarding the reliability of the ACE and ACE-V methodologies as applied to fingerprint analysis (*see, e.g., Avitia-Guillen*, 680 F.3d at 1260; *Baines,* 573 F.3d at 987); (2) it appears to be this Circuit's most exhaustive application of the *Daubert* factors to handwriting analysis, and the ACE-V methodology in particular, which are both at issue here; and (3) Defendants did not offer any persuasive arguments or binding authority in favor of a different conclusion.

1. <u>Defendants' Arguments Regarding the Alleged Unreliability of Ms. Carlson's Methodology are Meritless.</u>

Despite the overwhelming authority to the contrary, Defendants argue that Ms. Carlson's testimony is unreliable because Ms. Carlson: (a) did not perform the verification – or "V" - step of the ACE-V method; and (b) there is no scientific study that supports the reliability of the ACE-V method. Def. Mot., p. 5-9. These arguments are addressed below.

*i. The methodology employed by Ms. Carlson is reliable even if she did not perform independent verification.*

Defendants' first argument – that Ms. Carlson's methodology is unreliable because she did not perform independent verification – has consistently been rejected by courts that have considered the issue. *See*, *Baines*, 573 F.3d at 987 (criticizing the verification step of ACE-V analysis as "not truly independent," and suggesting that such verification adds little to reliability, but nevertheless finding expert testimony based on ACE-V protocols admissible); *U.S. v. Crisp*, 324 F.3d 261, 276 (4th Cir. 2002) (admitting testimony despite absence of independent verification); *U.S. v. Allen*, 208 F. Supp. 2d 984, 987 (N.D. Ind. 2002) (expert's experience was sufficient for reliability even in absence of independent verification under ACE-V); *Lucas v. Shively*, 31 F. Supp. 3d 800, 818 (W.D. Va. 2014) (unverified analysis meets basic threshold for reliability under *Daubert*).

In *Crew Tile,* Judge Martinez addressed this precise issue and determined that Ms. Carlson's failure to perform independent verification did not render her testimony inadmissible. Docket No. 237 at 11. In support of this conclusion, Judge Martinez noted that "independent testing is not the *sine qua non* of admissibility under *Daubert*" (citing *McCoy v. Whirlpool Corp.*, 2003 WL 1923016, at *3 (D. Kan. Apr. 21, 2003)). *Id*. at 10. He also considered that the role of verification in the ACE-V context is "primarily to make the expert's work 'reviewable,'" even if it was not actually reviewed. *Id*. at 11. In the instant case, Defendants' expert, Ms. Joseph, reviewed and critiqued Ms. Carlson's analysis based on the work shown in Ms. Carlson's report, and therefore it is undeniable that Ms. Carlson's work is reviewable. Def. Ex. I.

In light of the substantial authority ruling expressly against Defendants' assertion that the ACE method is not reliable absent independent verification, Defendants attempts to draw support

8

from *Pettus v. United States*, 37 A.3d 213 (D.C. 2012) (hereinafter "*Pettus*"). Defendants argue that *Pettus* stands for the proposition that the ACE-V methodology is only reliable if it is accompanied by application of additional methodological standards. Def. Mot., p. 6.

Defendants' reliance on *Pettus* is misplaced. As Judge Martinez noted in *Crew Tile*, most of the *Pettus* analysis is not relevant here because *Pettus* applied the *Frye* test of admissibility, which was superseded by the adoption of the Federal Rules of Evidence. *Crew Tile*, Docket No. 237 at 13; s*ee also, McKenzie v. Benton*, 388 F.3d 1342, 1350 (10th Cir. 2004) (noting that the "general acceptance" test formulated in *Frye* was superseded by the adoption of the Federal Rules of Evidence). In the instant case, the applicable standard is the flexible test announced in *Daubert* and its progeny construing Rule 702, and not the strict standard for admissibility annunciated in *Frye*. Accordingly, *Pettus*' suggestion that, under *Frye*, a document examiner must apply additional standards beyond the ACE methodology is irrelevant here.

In addition, Defendants' argument is foreclosed by binding Tenth Circuit precedent. As mentioned above, in *Baines*, the Tenth Circuit directly addressed the reliability and value of the verification step of the ACE-V process. 573 F.3d at 990. The Court concluded that the verification stage of the ACE-V process "is not the independent peer review of true science" and therefore does not contribute to the ACE method's reliability. *Id.* Despite this, the Court in *Baines* concluded that the district court did not abuse its discretion by admitting the fingerprint expert's testimony because, even without independent verification, the ACE method bears sufficient indicia of reliability under *Daubert* to overcome Rule 702's admissibility hurdle. *Id*. For these reasons, it is immaterial that Ms. Carlson did not perform independent verification, and this fact does not provide a legal basis to exclude her expert opinion testimony.

9

> ii. *The ACE method employed by Ms. Carlson in reaching her conclusions can be and has been tested.*

Next, Defendants argue that Ms. Carlson's methodology is unreliable because there is "no scientific study that supports the reliability of the ACE (or ACE-V) method." Def. Mot., p. 8. Defendants offer no authority for this proposition, and for good reason: neither Rule 702 nor *Daubert* requires that an expert's methodology be the subject of a scientific study that tests the methodology's reliability. Instead, *Daubert* merely suggests that, when assessing reliability, courts *may* consider "whether the theory or technique employed by the expert in formulating his expert opinion can be or has been tested." *Daubert*, 509 U.S. at 592-94. Furthermore, it is undisputed that the ACE methodology can be and has been tested. *See, e.g., Baines*, 573 F.3d at 990 (finding that the "core proposition" – i.e. that reliable identifications may be made from comparison of known and questioned samples - is testable and has "been subject to testing…in the world of criminal investigation, court proceedings, and other practical applications…"); *Legacy Vision*, at *10 (holding that questioned document analysis, and the ACE method in particular, "naturally lends itself to testing, both with respect to process and results," and "has been tested").

### B. <u>Ms. Carlson's Expert Opinion Testimony is the Result of a Reliable Application of Principles and Methods to the Facts of the Case.</u>

Ms. Carlson's report provides extensive evidence that her expert opinion in this case derived from a proper application of the ACE methodology. Def. Ex. F. Regarding step 1 ("Analyze"), Ms. Carlson compared the four known signatures to verify authorship and "to determine the natural variation in the regular normal design of Carl Edwards' signature." *Id.* at 5. Ms. Carlson also analyzed the patterns of writing and verified that the handwriting characteristics displayed in the known signatures are similar. *Id.*

As to step 2 ("Comparison"), Ms. Carlson used a side-by-side comparison to examine and verify letter height, letter formation, beginning, connecting and ending strokes, angles, slant and line quality. *Id*. at 6. This process revealed "significant similarities" between the handwriting displayed in the questioned and known signatures, including the 18 similarities for which Ms. Carlson provided a detailed description. *Id*. Although Ms. Carlson did not include in her report any specific dissimilarities present in the side-by-side comparison, she did affirm that her analysis involved "determine[ing] similarities and differences." *Id*.

As to step 3 ("Evaluation"), Ms. Carlson's report demonstrates how she evaluated the information generated in the analysis and comparison stages, including all of the unique, identifiable handwriting characteristics shared by the known and questions signatures, to reach the conclusion that Defendant Edwards did sign his signature on the questioned documents. *Id*. at 7.

Defendants nevertheless argue that Ms. Carlson's opinions are inadmissible because they are "not based on a proper application" of ASTM standard 7.12.5. Def. Mot., p. 11. This ASTM standard requires experts to "Evaluate the similarities, differences, and limitations." *Id*. As evidence of her alleged failure to apply standard 7.12.5, Defendants point to the fact that, in her report, Ms. Carlson did not discuss any differences between the known and questioned signatures. *Id*. at 11-12. As with Defendants' other attacks on Ms. Carlson's method, this precise argument was addressed and rejected by the Court in *Crew Tile*, and should be rejected here. *Crew Tile*, Docket No. 237 at 14.

To begin, Defendants' argument should be rejected because it is based on the false premise that Ms. Carlson was required to apply the ASTM standards. Defendants do not present any authority or argument showing that failure to apply ASTM standards renders Ms. Carlson's

testimony inadmissible. To the contrary, countless courts have admitted the testimony of experts applying ACE methods, with no discussion suggesting simultaneous application of the ASTM standards was required. Accordingly, there is no basis in law for Defendants' assertion that Ms. Carlson's opinions are inadmissible because they are "not based on a proper application" of ASTM standard 7.12.5. *See, e.g., Crew Tile*, Docket No. 237 at 14 (holding that Ms. Carlson's "application (or lack thereof) of ASTM standards can only go to the weight of her testimony, not its admissibility").

However, even if the Court determines that Ms. Carlson was required to abide by ASTM standards, Defendants' argument still fails because it is based on an incorrect interpretation of the ASTM standards and a mistaken characterization of the facts of this case. Contrary to Defendants' suggestion, ASTM standard 7.12.5 does not necessitate that an expert's report include an evaluation of any and all differences observed. Rather, as Defendants' own proposed expert witness confirmed, only significant, unexplainable differences require evaluation by an expert under ASTM standards. Def. Ex. I, p. 5 (noting that two specimens cannot be considered to be of common authorship if they display a "consistent dissimilarity of any feature which is fundamental to the structure of the handwriting, and whose presence is not capable of reasonable explanation"); *Id.* at 6 (critiquing Ms. Carlson's failure to address whether she observed one or more "significant differences").

In their Motion, Defendants did not assert (let alone prove) that significant, unexplainable differences exist between the known and questioned signatures. Instead, they merely offered the conclusory, unsupported statement that "the fact that Ms. Carlson only reviews similarities does not mean that there are only similarities." Def. Mot., p. 12. Furthermore, in her report,

12

Defendants' own proposed expert witness did not discuss any significant, unexplainable differences between the known and questioned signatures. Instead, Ms. Joseph merely noted a few features that "may 'reveal the nature of a forgery,'" such as pictorial similarity to the genuine signature. Def. Ex. I., p. 8-9. Importantly, however, Ms. Joseph did not conclude that the questioned signatures are forgeries. In short, Defendants have not – and cannot - prove that significant, unexplainable differences exist between the known and questioned signatures. Concomitantly, Defendants have not – and cannot – establish that Ms. Carlson's report is deficient for failing to include a discussion of significant, unexplainable differences.

For all of the foregoing reasons, Ms. Carlson's testimony is reliable under Rule 702 and *Daubert*, and Defendants' suggestions to the country should be ignored.

## II.    MS. CARLSON'S EXPERT OPINION TESTIMONY IS RELEVANT.

In assessing whether an expert's testimony is relevant, courts "look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Newman v. State Farm Fire & Cas. Co.*, 290 F. App'x 106, 114 (10th Cir. 2008) (citing *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2004)). "'Relevant evidence' is defined as that which has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Daubert*, 509 U.S. at 587 (quoting Fed. R. Evid. 401). "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility..." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994).

By Defendants' own admission, the notes in question "state disparate information concerning Ms. Lopez's alleged employed relationship with Mr. Edwards and/or his company." Def. Mot., p. 3. This information is factually relevant to the propositions asserted by Plaintiff, namely, that Defendants employed Plaintiff, but did not pay her appropriate wages. Ms. Carlson's expert opinion testimony regarding the authenticity of the signatures on the questioned notes will tend to make Plaintiff's assertions in this regard more or less probable, including by addressing whether Defendant Edwards communicated to Plaintiff and to third parties (such Pueblo Social Services) that Plaintiff worked for him, whether Defendant Edwards certified that Plaintiff performed farm work for Defendants, whether Defendant Edwards certified that Plaintiff worked for Defendants for room and board rather than cash wages, and whether Defendant Edwards certified that Plaintiff worked 40+ hours a week for him. Def. Ex. A.

Defendants' arguments against admitting this testimony are unpersuasive. First, Defendants argue that Ms. Carlson's testimony is irrelevant because it does not resolve the question of whether Plaintiff was employed by Defendants. Def. Mot., p. 14. This argument presumes, wrongly, that the Federal Rules of Evidence limit litigants to introducing only the most probative evidence and/or evidence that, by itself, will resolve ultimate issues. However, as the Supreme Court has stated, the threshold for establishing that evidence is relevant is "low," and all relevant evidence is admissible. *Tennard v. Dretke*, 542 U.S. 274, 285 (2004). Although the authenticity of the signatures on the questioned notes, alone, may not resolve all of the factual disputes between the parties, it does have some tendency to make certain facts of consequence more probable, and this is all that is required under Rules 702 and 401. Expert testimony on this subject is therefore relevant and admissible.

Second, Defendants argue that Ms. Carlson's testimony should be excluded because the jury may accord undue weight to her authorship opinion.[3] Def. Mot., p. 15. In support, Defendants cite to *Legacy Vision*, where, as discussed above in Section I, the Court permitted a handwriting expert to testify as to any similarities or differences between samples, the procedures that he followed in noting those similarities and differences, and the significance that he attached to them. No. CIV-04-1320-M, 2005 U.S. Dist. LEXIS 46890, at *22. However, the Court declined to allow the expert to offer his opinion that the Defendant in fact signed the document at issue because the Court believed, among other things, that there was "a substantial possibility that a jury will accord undue weight to the subjective authorship opinion of an 'expert.'" *Id*. at *21-22.

This aspect of the *Legacy Vision* opinion is inconsistent with prevailing federal court wisdom. "Every circuit court that has considered [the permissible scope of an expert's testimony] has concluded that a properly admitted handwriting expert may offer an opinion regarding the authorship of a handwriting sample if the factors enumerated in *Daubert* are satisfied." *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 446 F. Supp. 2d 252, 268 (S.D.N.Y. 2006).[4] The jury is intelligent enough to ignore what is unhelpful in its deliberations, and is ultimately free to reject Ms. Carlson's opinions if they are not credible and persuasive. *See, e.g., United States v. Jones*, 107 F.3d 1147, 1160-61 (6th Cir. 1997) ("The ability of jurors to perform the crucial visual

---

[3] This argument is substantially similar to Defendants' earlier argument, in Section C of their Motion, that Ms. Carlson should only be able to testify regarding similarities and differences observed in the handwriting samples, but not offer an ultimate opinion that the notes were, in fact, signed by Defendant Edwards. Def. Mot., p. 9-11. Both arguments are addressed here.

[4] *See also United States v. Prime*, 431 F.3d 1147, 1151–54 (9th Cir. 2005); *Crisp*, 324 F.3d at 271; *United States v. Mooney*, 315 F.3d 54, 61–63 (1st Cir. 2002); *United States v. Jolivet*, 224 F.3d 902, 905–06 (8th Cir. 2000); *United States v. Paul,* 175 F.3d 906, 909–12 (11th Cir. 1999); *United States v. Jones,* 107 F.3d 1147, 1161 (6th Cir.1997); *United States v. Velasquez,* 64 F.3d 844, 850–52 (3d Cir.1995).

comparisons relied upon by handwriting experts cuts against the danger of undue prejudice from the mystique attached to 'experts.'" (quoting *United States v. Starzecpyzel*, 880 F. Supp. 1027, 1044 (S.D.N.Y. 1995) (declining to limit testimony to observation of similarities and differences)).

Furthermore, as Judge Martinez noted in *Crew Tile* when considering this exact issue, there is little benefit to allowing Ms. Carlson to testify regarding differences and similarities while stopping short of an ultimate opinion because "an intelligent jury would be left with little doubt about what Ms. Carlson's ultimate opinion would be.'" *See also, Starzecpyzel*, 880 F. Supp. at 1047 ("[J]urors are likely to divine an [expert's] opinion as to genuineness from the thrust of the first stage testimony [regarding similarities and differences observed]").

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion and permit all expert opinion testimony offered by Ms. Carlson.

Respectfully submitted this 12th day of July, 2018,

CORNISH & DELL'OLIO, P.C.


s/ Donna Dell'Olio
Donna Dell'Olio, #10887
Julie D. Yeagle
CORNISH & DELL'OLIO, P.C.
431 N. Cascade Ave., Suite 1
Colorado Springs, CO 80903
Telephone (719) 475-1204
Facsimile (719) 475-1264
Email: ddellolio@cornishanddellio.com
jyeagle@cornishanddellio.com
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 12th day of July, 2018, I electronically filed with the Clerk of Court using the CM/ECF system a true and correct copy of the foregoing **Plaintiff's Response to Defendants' Motion to Exclude the Expert Handwriting Testimony of Wendy Carlson** to the following individual via email:

Lily E. Nierenberg
GODFREY | JOHNSON, P.C.
9557 S. Kingston Court
Englewood, Colorado 80112
Phone: (303) 228-0700
Fax: (303) 228-0701
Email: nierenberg@gojolaw.com

                    s/Esther Kumma Abramson
                    Esther Kumma Abramson