Civil Action No. 17-cv-0045-CMA-KLM


Stephanie Lopez v. Carl Edwards, et al


Exhibit 1 to Plaintiff's Response to Defendants' Motion to Amend Judgment Pursuant to Fed.R.Civ. P. 50(b) and 59(e), Doc # 149

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00045-CMA-KLM

**STEPHANIE LOPEZ, individually,**

**Plaintiff,**

**v.**

**CARL EDWARDS, individually; and**
**CASPER TRAILER SALES, INC., a Colorado Corporation,**

**Defendant.**

_____

REPORTER'S PARTIAL TRANSCRIPT
(Jury Trial Day 4 - Rule 50 Motion)

_____

        Proceedings before the HONORABLE CHRISTINE M.
ARGUELLO, Judge, United States District Court, for the
District of Colorado, commencing at 7:03 a.m. on the 27th
day of September, 2018, Alfred A. Arraj United States
Courthouse, Denver, Colorado.

### A P P E A R A N C E S

FOR THE PLAINTIFF:
DONNA E. DELL'OLIO and JULIE D. YEAGLE, Cornish &
Dell'Olio, 431 N. Cascade Ave., Suite 1, Colorado Springs,
CO 80903
FOR THE DEFENDANT:
BRETT M. GODFREY and LILY E. NIERENBERG, Godfrey Johnson,
P.C., 9557 S. Kingston Ct., Englewood, CO 80112

1                    **SEPTEMBER 27, 2018**

2          (Outside the presence of the jury.)

3          THE COURT:  You may be seated.

4          Back on the record in 17-cv-0045, Stephanie Lopez

5    v. Carl Edwards, et al.

6          We are here this morning for both a Rule 50, a

7    motion and ruling, and for the charging conference on the

8    jury instructions.

9          Ms. Nierenberg, you may proceed.

10         MS. NIERENBERG:  Thank you.  I will move to the

11   podium.

12         Thank you, Your Honor.  As indicated yesterday,

13   defendants are moving in this case for a directed verdict

14   based on the lack of evidence in the record to support the

15   fact that Ms. Stephanie Lopez was an employee of Casper

16   Trailer Sales at any point other than the period of

17   stipulated employment, which covers the payroll period.

18         And for the period before the payroll started, the

19   Court indicated that there was potentially a factual

20   dispute on the basis that Mr. Edwards had denied that

21   Ms. Lopez was a trainee.  So I would like to address that

22   first for the Court, if I may, and to provide some context

23   for the record.

24         Under the Fair Labor Standards Act's provisions

25   that apply in this case, Sections 206 and 207, the

1   relevant requirements are, A, that there be an

2   employee/employer relationship between the parties.  And,

3   B, that that relationship be with a company that is an

4   enterprise engaged in commerce, as that is defined under

5   the Act, unless the employee individually proves that she

6   is covered, and, in this case, that latter part is not at

7   issue, it has never been alleged.

8           So, in front of the Court is the question of

9   whether or not Ms. Lopez has established facts that would

10  demonstrate her employment with Casper Trailer Sales.  And

11  at the moment I am just focused on the period prior to

12  when she was a payrolled employee.  And Ms. Lopez' only

13  evidence on that issue is the fact that her own -- by her

14  own testimony, she was doing work for Mr. Edwards during

15  that period.

16          THE COURT:  Isn't that sufficient?

17          MS. NIERENBERG:  No, Your Honor.

18          THE COURT:  Don't I have to look at the evidence in

19  the light most favorable to her?  If she testified, I was

20  an employee, I was doing these things for him, he was

21  paying me in cash.

22          MS. NIERENBERG:  Your Honor, I agree with you on

23  the standard for looking at the facts in the light most

24  favorable to the plaintiff.  However, that is only to the

25  extent she has alleged facts that would meet that

1    definition.

2         Now, let me explain the definition a little further

3    for the record.  And courts have rejected the narrow

4    interpretation of simply defining an employee or

5    employment, as those terms are established by the

6    definitions' provisions of the Act.

7         Plaintiffs have urged in this case, and I believe

8    the Court has rejected, the standard that one must simply

9    demonstrate that they were suffered or permitted to work

10   in order to do -- in order to be an employee.  That is too

11   narrow of a definition.  And although Fair Labor Standards

12   Act is clearly a law that was passed in order to favor

13   workers --

14        THE COURT:  I haven't rejected that, that is what

15   is stated in the FLSA.  That is the language.  I just

16   think that is legales, and that won't mean anything to the

17   jury.  So, I haven't rejected that that is what the FLSA

18   says.  I'm just saying that there are other instances,

19   such as the trainee or the volunteer.

20        I will tell you what my problem is, is that while

21   that may be your theory; that she was a trainee during

22   that period of time.  Her testimony is, I was working for

23   him.  He was showing me how to do all these things.  He

24   didn't put me on the payroll until later.

25        Mr. Edwards' testimony, on the other hand, is that

1   she never was a trainee until he had her on the payroll.

2          MS. NIERENBERG:  And let me just skip to addressing

3   that, then, Your Honor, although I would like to make a

4   couple more points on the definitions issue.

5          Mr. Edwards shouldn't have to admit that Ms. Lopez

6   was doing work for him when he denies that she was simply

7   in order to gain the benefit of a trainee status under the

8   Act.  Logically, that doesn't make sense.

9          Moreover, our consistent position in this case,

10  from the time of the Answer until the testimony that

11  you've heard, is that Ms. Lopez was not doing work for the

12  company prior to when she was hired as an employee.

13         Now, if then Mr. Edwards had to suddenly

14  acknowledge that, in fact, she was a trainee for some

15  period in order to gain the benefit of what Ms. Lopez' own

16  testimony was, was that from until she was a payrolled

17  employee, she was a trainee.  And I would almost argue

18  that her own testimony was that throughout the period that

19  she was a payrolled employee, she was trainee, because she

20  didn't make any distinction there.

21         But, Mr. Edwards can't say that she was a trainee

22  without acknowledging that she was working, which he does

23  not do.  So, the definition doesn't require that somebody

24  admit that there was work being done.  However, the facts

25  applicable in many of those cases were that there was

1 undisputed testimony that work was being done.  In this

2 case, that is not true.

3          However, there is no evidence in the record

4 supporting that Ms. Lopez was a pure employee of the

5 company prior to that period.  And on that note --

6          THE COURT:  Well, there is.  Well, you are saying

7 there is no evidence to support her allegations or her

8 testimony?

9          MS. NIERENBERG:  Her allegations are what is at

10 issue in the case.

11          THE COURT:  Right.  Her testimony was she was an

12 employee; that she did work these times.  She gave

13 detailed testimony as to what she did during these times,

14 which goes beyond just the perimeter watches and all of

15 that.  She said at that time, prior to her being put on

16 payroll, she was, in fact, working with him.

17          Now, her testimony could be viewed as that was a

18 trainee.  And I think that is what Mr. Godfrey went into.

19 But I think she has enough in the record to substantiate,

20 if the jury believes her, that she was, indeed, an

21 employee during that time.

22          MS. NIERENBERG:  I think that is why I need to

23 return to the definitions and the legal foundation for

24 what is considered compensable employment under the Fair

25 Labor Standards Act and the way courts have addressed that

1    issue in this Circuit.  Because there are ample examples

2    of times when a person was doing things that, you know,

3    would be the equivalent of lifting a broom and sweeping,

4    and that was not found to be compensable work under the

5    Fair Labor Standards Act.

6         THE COURT:  But she said he trained me.  He showed

7    me how to take out the bearings.  He showed me how to glue

8    whatever, I don't know the language on it.  And in her

9    testimony, that was both before -- she did that both

10   before and she did that after she was put on the payroll.

11        MS. NIERENBERG:  So, Your Honor, let's assume that

12   she did that work before she was on payroll.  That does

13   not negate my position.  There have been circumstances --

14        THE COURT:  But isn't that for the jury to

15   determine, not me?

16        MS. NIERENBERG:  And I appreciate that, but based

17   on the standards that are applicable, there is no fact

18   dispute that she would not be found to meet that trainee

19   -- those trainee elements prior to when she was a

20   payrolled employee.

21        So, I can go through the elements again one by one.

22        THE COURT:  No, I don't need it.  I am inclined, if

23   that is the basis of it, I think it is a matter for the

24   jury to determine.

25        MS. NIERENBERG:  There are a couple other points,

1    but first I want to first just make a side note to address

2    for the record that we would move to strike Antoinette

3    Lenzotti's testimony, to the extent that she said he was

4    her boss, on the basis --

5            THE COURT:  I think it is too late for that.

6            MS. NIERENBERG:  And based on what we had been

7    informed would be the testimony, we were not expecting

8    that.

9            THE COURT:  Well, then you should have objected at

10   the time it happened.  It is too late now.

11           MS. NIERENBERG:  Okay.  I wanted to give that -- an

12   opportunity for that to be corrected in the record.  It

13   lacked foundation.

14           THE COURT:  And you should have objected yesterday.

15           MS. NIERENBERG:  The other point that makes this

16   appropriate for a Rule 50 motion, as opposed to a fact

17   determination for the Court, is that by Ms. Lopez' own

18   testimony, she was doing the work in exchange for a house

19   that Mr. Edwards owned.

20           And if now is the time -- I believe it can be done

21   at any time -- I would ask the Court to take judicial

22   notice of the fact that the 1208 Elko Street property is

23   owned by SJE Holdings Company and not Casper Trailer

24   Sales, Inc.  And I can provide that information for the

25   Court in the form of public records that I have been able

1    to pull up on my computer.  But I don't believe there is

2    any dispute on that fact.  And I can't recall if it came

3    out in testimony.

4         That is one issue, that the fact that Ms. Lopez was

5    doing work in exchange for that house, by her own

6    testimony, takes her, as a matter of law, outside of the

7    definition of an employee for the company, not simply on

8    the grounds of being a trainee, but on the grounds that

9    other courts have made a determination, as a matter of

10   law, that somebody is not a trainee, when the economic

11   reality of the relationship do not support the fact that

12   the person was expecting compensation from the company, or

13   that the company, itself, governed the person's working

14   hours, or that the person had any type of value to that

15   company that was being compensated with wages from the

16   company.

17        I will admit that I have not found a case that

18   matches the facts of this particular circumstance.  In

19   most cases, it is actually much closer; somebody is

20   working as an independent contractor, they are working as

21   a volunteer every day.

22        I have found, and it was cited in one of the

23   briefings, I will have to remember which, several

24   circumstances in this circuit that match and in which the

25   Court has determined that the worker was not an employee

1  entitled to compensation.

2          One of those cases is <u>Padilla v. American</u>

3  <u>Federation of State, Federal, and Municipal Employees</u>.

4  And in that case, there was a similar circumstance where

5  one individual was working both as an employee for the

6  Public Water Authority, and that was not disputed, and was

7  also the president of the union.

8          And while he was doing union work, there was a

9  provision whereby he could be compensated for work time

10  lost for that Public Water Authority.  But his position

11  was that he should be qualified as an employee for the

12  union, and that all work done for the union was

13  compensable under the Fair Labor Standards Act.

14          And the Court said, no, he could not recover from

15  the union because he was not an employee, he was not

16  economically dependent on the union, and he did not

17  receive wages for his services.

18          In fact, he knew that the only compensation

19  available for his services was through this other

20  provision that allowed him to write down the time that was

21  lost as a employee.  That full citation is 551 F. App'x

22  941, Tenth Circuit, 2014.

23          Now, I believe that the circumstances of that case

24  directly bear on this case as to why Ms. Lopez was not an

25  employee of the company, when the only compensation she

1    expected to receive was a house, that was not owned by the

2    company, and that she knew that there were other employees

3    of the company, and that her situation was obviously

4    different.

5          And that is why her own testimony -- again, we are

6    not making those admissions.  Defendant still does not

7    admit that she was working prior to that time.

8          Now, another case, <u>Jones v. Stewart</u>, 57 F.3d 1544,

9    and that is also a Tenth Circuit, 1995.  In that case, the

10   Court reviewed whether recipients of public benefits in

11   Utah were employees.  They performed work.  They had to

12   perform work, in fact, to receive the benefit that they

13   were receiving from the state.

14         And this case was not about whether or not the

15   state was an employer, it was about whether or not the

16   individuals could be recipients of benefits from the state

17   that were clearly based on a welfare principle and

18   assistance, and whether or not that was compensable

19   employment under the Fair Labor Standards Act.  And the

20   Court said it was not, and they were not considered to be

21   employees.

22         And neither of those cases, by the way, reviewed

23   under a specific multi-factor test, both of those cases

24   acknowledge that tests had been established in this

25   circuit for a trainee distinction and for an independent

1    contractor distinction, but that those factors, while

2    helpful, did not need to be met in order for the court to

3    find, as a matter of law, an employee was not -- I am

4    sorry, a worker was not an employee -- an employee was not

5    an employee.

6         Now we have Rice, which is the case that has been

7    cited for the trainee factors, and the first case that

8    established those in this Circuit.  And it stated, again,

9    that it wasn't a matter of having to meet all of those

10   factors, but that the factors, themselves, were helpful

11   and went to the issue of whether or not admitted trainees

12   could also be compensated under the Fair Labor Standards

13   Act, and found, in that case, that although it was a

14   longer term of training than Walling v. Portland Terminal,

15   which is the first case that looked at this issue out of

16   the Supreme Court, it found that, nonetheless, those

17   firefighters in training were not employees.

18        Now, the only last case I want to touch on, because

19   I do think it is helpful, although it is not from this

20   circuit, is a Tenth Circuit case, Brown v. New York City

21   Department of Education, 755 F.3d 154, that is the Second

22   Circuit case from 2014.  And that is a case that I believe

23   most closely matches the factual circumstances that we

24   have here.

25        An individual, a young man, perhaps without much

1    training or formal education, wanted to work, and he went

2    and found a position where his brother was working, and it

3    was for kind of a mentorship program, where he was

4    involved not as a mentee, but actually involved in the

5    program.  He was providing services.  And he was doing

6    this full time, and he was doing this for, I believe, the

7    period of roughly a year, it might have been more, it

8    might have been less.  Off the top of my head I can't

9    remember.

10          He had had conversation with his boss about a

11   full-time position.  None was available.  So his boss told

12   him there was one point at which a possibility might be

13   that there was a position that would become available.

14   And this individual knew that he would come to work every

15   day and not pick up a paycheck for that time.  And the

16   Court found that, as a matter of law, he was a volunteer,

17   and not an employee.

18          And now that was not based on the review again of a

19   factored analysis, but it was based on the fact that under

20   the totality of the circumstances, that individual was not

21   expecting compensation from the New York City Department

22   of Education when he went to that job, even though he had

23   asked for a job, even though he had expressed that he

24   wanted to be an employee, he knew that he was not.

25          And so in this case, that just establishes a

1    framework for the Court to understand that there are many

2    circumstances in which an individual may appear to be

3    doing significant work for an entity, however, that work

4    does not fall -- does not make that person an employee

5    under the Act.

6         And, Ms. Lopez, in this case, has stated -- and I

7    just want to briefly return to the trainee piece to

8    state -- she has stated both that she was only doing work

9    up until the time she was on payroll, she was only doing

10   work in exchange for a house that she believed Mr. Edwards

11   was going to give her, and that the reason that she became

12   a payrolled employee was because she lost faith in that

13   agreement and said, Mr. Edwards, I am sorry, I can't do

14   this anymore, I would like you to put me on payroll.  And

15   he complied.

16        And then the second piece is that she has said she

17   was doing this work not ever on her own.  I don't believe

18   that her testimony was that she was ever doing something

19   that related to Casper Trailer Sales and the work of

20   Casper Trailer Sales on her own.  She was always doing it

21   under close supervision.

22        THE COURT:  And that, again, I think that is an

23   issue for the jury to determine, not for me.  And looking

24   at Padilla, there, that was summary judgment.  It was a

25   very short order.  It is an OJ, as we call them, order and

1   judgment, as opposed to an opinion, so it is not binding.

2       But I think that that was a totally different

3   circumstance.  The Court there found there were no

4   disputed issues of fact.  This case, there are a ton of

5   disputed issues of fact.  The story of the plaintiff and

6   the story of Mr. Edwards are diametrically opposed on

7   virtually everything.

8       MS. NIERENBERG:  And, Your Honor, I don't disagree

9   with the statement that there are disputes of fact, I

10  disagree with the fact that they are material.

11      THE COURT:  They are very material, I think.  So I

12  am denying the motion.

13      MS. NIERENBERG:  Your Honor --

14      THE COURT:  We have already had 25 minutes.  We

15  need to get on.

16      MS. NIERENBERG:  I would ask just for a ruling on

17  the judicial -- taking judicial notice of the fact that

18  the house was owned by SJE Holdings.  Again, I would be

19  happy to provide the Court --

20      THE COURT:  I don't think it matters.  She was

21  doing the work.  Essentially, what the Court in the case

22  that you cited to me says, I don't think it matters

23  whether she was going to get the compensation.  She was

24  doing the work in compensation for, in her testimony, the

25  title to the farmhouse.

1          I don't think that it matters that that

2     compensation wouldn't be coming from her employer, but

3     from the individual who owned both businesses.  So I don't

4     think it matters.

5          MS. NIERENBERG:  Your Honor, with due respect --

6          THE COURT:  And if you had wanted me to do this --

7     I asked you to submit a brief last night.  You didn't

8     submit a brief so I can look at these.  You hit me now an

9     hour and a half before the jury comes in.  We still have

10    to do the charging conference.  So if you wanted me to

11    seriously consider it, you should have gotten these to me

12    last night.

13         MS. NIERENBERG:  Your Honor, my apologies for that.

14    I appreciate the ruling.  And I would just ask that under

15    Rule 201 for this to be judicially noticed, that is given

16    to the jury, because it is not a fact subject to

17    reasonable dispute.  And I believe it will matter to the

18    factual determination that will be submitted to the jury

19    based on your ruling on this.

20         MS. DELL'OLIO:  I would like to address that

21    request in taking judicial notice.

22         THE COURT:  All right.  I am not sure exactly what

23    I am supposed to take judicial notice of.

24         MS. NIERENBERG:  The fact that the 1208 Elko Street

25    property was owned by SJE Holdings, Inc. during the period

1    in dispute.

2         THE COURT:  Well, I don't know that I should take

3    judicial notice of that.  I don't know.  I think you can

4    get that in through testimony or some other way.  At this

5    point, I'm not willing to do anything with respect to

6    judicial notice.

7         MS. NIERENBERG:  Thank you, Your Honor.

8         (Further proceedings had but not transcribed per

9    request of ordering counsel.)

10

11         **R E P O R T E R ' S   C E R T I F I C A T E**

12

13         I, Darlene M. Martinez, Official Certified

14   Shorthand Reporter for the United States District Court,

15   District of Colorado, do hereby certify that the foregoing

16   is a true and accurate transcript of the proceedings had

17   as taken stenographically by me at the time and place

18   aforementioned.

19

20         Dated this 5th day of November, 2018.

21

22         _____

23         s/Darlene M. Martinez

24         RMR, CRR

25