IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00045-CMA-KLM

STEPHANIE LOPEZ, individually,

    Plaintiff,

v.

CARL EDWARDS, individually, and
CASPER TRAILER SALES, INC., a Colorado Corporation

    Defendants.

---

**Reply to Defendants' Response Opposing Plaintiff's Motion for Award of Attorney's Fees and Costs, Pursuant to 29 U.S.C. § 216(B) DOC # 153**

---

    COMES NOW the Plaintiff, Stephanie Lopez, by counsel, Donna Dell'Olio, Cornish & Dell'Olio, P. C. and replies to Defendants' Response to Plaintiff's Motion for Award of Attorney's Fees and Costs.

**1. As the Prevailing Party Plaintiff is Entitled to An Award of Fees Under the *Farrar* Standard.**

    Defendants have conceded that Plaintiff is a prevailing party under the standard of *Hensley v. Eckerhart*.[1] "Defendants do not at this time contest that Plaintiff is a prevailing party,…" Defendants' Response Opposing Plaintiff's Motion for Award of Attorney's Fees, DOC # 153, at page 5.

---

[1] 461 U.S. 424, 455 n. 7 (1983).

1

Defendants' position is that Plaintiff is not entitled to an award of attorney's fees under the standard of *Farrar v. Hobby*.[2] Under the standard of *Farrar v. Hobby as applied by this court in Roane v. Frankie's Bar & Grill,* 2018 U.S. Dist. LEXIS 145369, the Plaintiff in this action achieved enough success to support an award of attorney's fees.

"With respect to the first *Farrar* factor, the Court considers the nominal difference between the amount Plaintiff sought and the damages she recovered in the context of the entire litigation." *Id.* *3. In *Roane* this Court found that the monetary success achieved by Ms. Roane was "remarkably distinct from the corresponding difference in Farrar." *Id.* *4. The Court did not simply compare the amount sought to the monetary judgment obtained.[3] Applying the *Roane* standard, Plaintiff's success here, in purely mathematical terms far exceeded what Ms. Roane achieved in her case. In addition, a significant difference noted by this Court between the facts in *Farrar* and the facts in *Roane and Koopman v. Water Dist. No. 1 of Johnson Cty.,Kan.,* 41 F.3d 1417, 1421 (10th Cir.1994) was that the litigation in *Roane* was not protracted. Similarly, the litigation in this case was not protracted. While the litigation was expensive, the expense was driven by Defendants' motion practice and Defendants' unlimited ability to pay lawyers. Plaintiff made every possible effort, throughout the litigation and continuing to this day to end the litigation by compromise settlement. The course of the

---

[2] 506 U.S. 103,115 (1992).

[3] In *Roane* the monetary judgment represented 1/10,000th of the amount sought, without considering that claims for hostile work environment and retaliation were denied. In the present case Plaintiff obtained 159/10,000th and had no claims denied.

litigation and the result obtained in this case, as in Roane, are remarkably distinct from *Farrar.*

The second *Farrar* factor "'the significance of the legal issue on which the Plaintiff claims to have prevailed,' *Id.* at 121 'goes beyond the actual relief awarded [which is the focus of the first factor] to examine the extent to which the plaintiff succeeded on [her] theory of liability.'" *Roane v. Frankie's Bar & Grill,* 2018 U.S. Dist. LEXIS *5. By any analysis Stephanie Lopez prevailed on a significant legal issue-the right of a worker to be paid minimum wages and overtime for her work. Stephanie Lopez' purpose in maintaining her law suit was to prove that Carl Edwards arbitrarily failed to pay her earned wages. She proved that Carl Edwards arbitrarily failed to pay her earned wages.

"… the third and final *Farrar* factor – the public purpose served by the litigation -- the Tenth Circuit has explained, 'a public goal is accomplished if the plaintiff's victory encourages attorney's to represent civil rights litigants, affirms an important right, puts the defendant on notice that it needs to improve, and/or provokes a change in the defendant's conduct.'" *Id.* No doubt the jury verdict accomplished the public goal of putting the Defendants and other employers on notice that withholding earned wages from an employee is illegal and that such conduct can have consequences for the employer.

Plaintiff urges the Court to find that evaluation of all three *Farrar* factors leads to the conclusion that Plaintiff achieved enough success to warrant an award of attorney's fees.

*2.* **The Loadstar Should Not Be Adjusted to Reflect Excessive Billing.**

The Defendants argument that 24 hours of Plaintiff's counsel's time should be unpaid based on a bald assertion that time spent was excessive. DOC # 153, p. 8. The Defendants' argument, unsupported by an affidavit or even a specific factual allegation, is nothing more than a conclusion and encourages the court to "eyeball" fees and arbitrarily reduce them. This practice has been expressly discouraged by the Tenth Circuit Court of Appeals. "[T]he record ought to assure us that the district court did not 'eyeball' the fee request and cut it down by an arbitrary percentage . . . ." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205,* 90 F.3d 1307, 1314 (7th Cir. 1996); *Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir. 1998). Defendants' only argument for striking 24 hours from Plaintiff's fee petition is that its counsel worked "5.5 hours responding to Plaintiff's motion in limine" and "4.5 hours responding to Plaintiff's proposed jury instructions" DOC # 153, p. 9.

Defendants offer no reason for striking 24 hours from Plaintiff's attorney's fee petition other than its claim that Defendant's attorneys worked fewer hours on the same task. Defendants' premise, that the work performed by Plaintiff's counsel and Defendants' counsel performing a particular task, for example opposing a motion in limine or objecting to jury instructions, should take the same number of hours is obviously not true. First, the issues raise in the competing motions in limine are different. Defendants' motion in limine (DOC # 97) sought to exclude seven broad categories of evidence e.g. evidence of work performed for Carl Edwards by Stephanie Lopez, Edwards promise to give Lopez a house etc. Plaintiff prevailed at hearing on

every issue Defendants sought to exclude. Defendants' response to Plaintiff's motion in limine (DOC # 100) addressed entirely different, narrow legal issues e.g. whether Plaintiff had been incarcerated or had been convicted of a crime, whether Plaintiff was a Lesbian or received gifts from Carl Edwards. Plaintiff's counsel spent 7.34 hours on her brief. Defendants' brief claims that Ms. Nierenberg spent 4.5 hours responding to Plaintiff's motion in limine. No billing records or affidavits were filed to establish this claim. Moreover, the fact that Plaintiff was completely successful in opposing Defendants' motion in limine and Defendant prevailed on only 50% of the issues it briefed in its opposition to Plaintiff's motion in limine suggests that Plaintiff's counsel's work was effective. Julie Yeagle performed legal research, searching unsuccessfully for case law where an employee had performed personal chores or errands for her supervisor and sought to have the employer pay for her time. Although the research was appropriate it did not produce case law which could be included in the opposition.

Defendants also claim that Plaintiff's counsel spent an excessive amount of time on Plaintiff's Objections to Defendants Proposed Jury Instructions. DOC # 108. Defendants claim Plaintiff's counsel spent 20 hours on objections which is not accurate. The billing records show Donna Dell'Olio spent 11.5 hours on the objections on August 22 and a small amount of time finishing objections on August 23. Julie Yeagle spent time (approximately 1 hour on August 20 and 2 hours on August 21) organizing and charting the instructions received from opposing counsel. Organizing and analyzing opposing counsel's multiple drafts was an extremely confusing process. Julie Yeagle's work organizing the drafts and creating charts for Donna Dell'Olio was invaluable work.

5

Opposing counsel's draft instructions had little to do with the law and showed an unusual lack of knowledge of the law.  For example, her instructions assumed the Defendants' could be awarded damages based on an affirmative defense.  See Exhibit 1, Defendants' First Draft of Jury Instructions.  Apparently Defendants' counsel did not understand the difference between an affirmative defense and a counterclaim.  Plaintiff's counsel tried unsuccessfully to use unmodified versions of the Faculty of Federal Advocates, Model Employment Law Instructions.  Defendants' counsel created "original" modified versions of standard instructions which required a great deal of time to understand.

Defendants' argument, unsupported by affidavit, that Defendants' counsel spent only 4.5 hours responding to Plaintiff's counsel's instructions compares apples to oranges and does not provide a rational basis for striking time from Plaintiff's petition for attorney's fees.

**3. The Loadstar Should not Be Adjusted Aggressively Under *Hensley* to Account for Plaintiff's Limited Success.**

**A. Plaintiff Did Not Bring Unsuccessful Claims But Did Have Limited Success on Claims She Maintained.**

Plaintiff agrees that there should be some downward adjustment for limited success on claims Plaintiff maintained.  Plaintiff disagrees with Defendants' contention that Plaintiff brought unsuccessful claims.

> If a plaintiff does not prevail on all claims for relief, the court must determine whether an adjustment is necessary.  The Supreme Court has declared that if a plaintiff fails to prevail on claims "unrelated" to those on which he or she succeeds, work on the unrelated unsuccessful claims cannot be compensated.  *Hensley v. Eckerhart*, 461 U.S. at 434-35.

> These claims are to be treated as if raised in a separate lawsuit that the plaintiff lost. *Id.*

*Ramos v. Lamm,* 713 F.2d 546, 556, 1983 U.S. App. LEXIS 26741, *23.

In this case Plaintiff did not maintain causes of action which were unsuccessful warranting a reduction in fees for unrelated work. Plaintiff did not fail to prevail on claims which were unrelated to the claims on which she succeeded as Defendants' brief asserts. Plaintiff's Second Amended Complaint (DOC # 60) contains two causes of action, the first for violations of the Fair Labor Standards Act and the second for violations of the Colorado Wage Act. Plaintiff prevailed on her claim under the Fair Labor Standards Act. The second claim for penalties under the Colorado Wage Act is pending. The two claims are inextricably intertwined. The only additional facts Plaintiff was required to prove to establish the violation of the Colorado Wage Act were stipulated to by Defendants. DOC # 103.

Defendants' sole argument for striking $24,000.00 from the fee petition is their unsupported belief that different time periods within a single cause of action, e.g. time periods within a two year statute of limitations vs. within a three year statute of limitations or periods before Plaintiff filled out time cards vs. periods during which Plaintiff filled out time cards are separate claims. Defendants cite no authority, and none exists, for its novel definition of a claim, as a temporal subpart of a cause of action.

Defendants cite one case in support of the argument that separate temporal periods covered by a cause of action constitute separate claims. Defendants rely upon *McGrath v. Cent. Masonry Corp.,* 2010 U.S. Dist. LEXIS 152322 (D.Colo.2010). The

7

case of *McGrath v. Cent. Masonry Corp.* and every case cited therein[4] uses the term "claim" to mean a cause of action. None of the cases cited in *McGrath* uses the term "claim" to mean anything but a cause of action. *McGrath* provides no support for Defendants' novel theory that failure to fully succeed on a claim invites the court to analyze whether a part of a claim which was successful could have been achieved without work identified by a Defendant.

Based on their novel theory that "claim" means something other than a cause of action, Defendants ask the Court to strike $24,000.00 from the Plaintiff's fee petition. Defendants contend, without any authority, that all work related to a temporal period within a cause of action should be stricken.

Defendants' theory is a clever argument for requiring a prevailing party to prove that work performed was necessary to achieve the judgment. None of the twelve factors identified in *Ramos v. Lamm,* 713 F.2d 546, 552 (10th Cir. 1983) and other Tenth Circuit cases (*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Battle v. Anderson*, 614 F.2d 251, 258 (10th Cir. 1980); *Francia v. White*, 594 F.2d 778, 782 (10th Cir. 1979)) require a prevailing party to prove that specific work was necessary to achieve the judgment. The test has always been "…the number of hours reasonably expended on the litigation…." *Hensley v. Eckerhart*, 461 U.S. at 433.

---

[4] *Robinson v. City of Edmond*, 160 F.3d 1275 (10th Cir. 1998) (cause of action under state constitution and cause of action under federal constitution were two claims); *Tidwell v. Fort Howard Corp.*, 989 F.2d 406 (10th Cir. 1993).("claims" were separate causes of action under Equal Pay Act, Fair Labor Standards Act, and Title VII); *Starrett v. Wadley*, 876 F.2d 808, 824-25 (10th Cir. 1989), "claims were causes of action under Title VII and Section 1983).

Defendants' argument would have the Court reject the test of whether time was "reasonably expended on the litigation" and substitute a different test, whether the work was necessary to achieve the judgment.

Defendants' have asked the Court to strike from the fee petition over $24,000.00 in fees for all time spent opposing a motion for partial summary judgment and time spent preparing an expert witness's testimony. DOC # 153, pp. 10-11. Such a dissection of the time spent in litigation is not consistent with the law as repeatedly announced by the United States Supreme Court. The correct legal standard is whether the time was "reasonably expended on the litigation" *Hensley v. Eckerhart, Id.*

Time spent opposing the Motion for Partial Summary Judgment (DOC # 65) was not only time reasonably expended on the litigation it was time necessarily expended in the litigation.

Time spent hiring and preparing a handwriting expert was also time reasonably expended on litigation. The Defendants denied Requests for Admission which would have eliminated the need for a handwriting expert. Exhibit 2. The exhibits which were examined were central to the case. The exhibits were written admissions by Carl Edwards that Stephanie Lopez worked for him during periods of time when he denied that she worked for him.

There is no recognized legal standard which would support striking hours spent opposing a motion for summary judgment or preparing an expert witness from the fee petition as Defendants request because after-the-fact the time was determined to be not necessary to achieve the judgment obtained . DOC # 153, pp.10, 11.

### B. Percentage Reductions to Loadstar in Comparable Cases

Defendants are not making a completely fair comparison for a percentage reduction when they compare Stephanie Lopez's success at trial to the Plaintiff's success in *Roane v. Frankie's Bar & Grill (2018 U.S. Dist. LEXIS 145369)* where the Court applied a 45% reduction. In *Roane* the Plaintiff lost two of three claims, she lost her claims for hostile work environment and retaliation. She was also seeking compensatory and punitive damages which were not awarded. She was awarded a judgment of one dollar. By comparison Stephanie Lopez's only claims were for wages and she was awarded a judgment for unpaid wages.

As the Court knows well every case is different. There is limited utility in looking for "similar" cases and applying a percentage reduction applied by another judge. The cases cited by Defendants as "similar" for purposes of applying a percentage reduction are distinguished from Stephanie Lopez's case in significant respects. Most significantly in every case cited the plaintiffs lost claims. In *Mendoza v. Valley Park Apts., Inc.,* 2014 U.S. Dist. LEXIS 32671, *25, the court noted that the plaintiffs succeed[ed] on only one of several claims they asserted, and voluntarily abandoning their class and collective action allegations…" *Id.*

In *Pearson v. Ross G. Stephenson Associates., Inc.* (1992 U.S. Dist. LEXIS 14101) the attorneys submitted a fee petition based on reconstructed hours. The opinion contains no analysis of the decision to reduce fees by 25%. In *Barfield v. New York City Health & Hosps. Corp.,* 537 F.3d 132, 252 (2nd Cir. 2008) the plaintiffs sought class certification which was denied. *Hilton v. Exec. Self Storage Assocs.*, (2009 WL

1750121) is not a Tenth Circuit case and was not followed by this Court for that reason when it decided *McGrath v. Cent. Masonry Corp.*, U.S. Dist. LEXIS 152322.

Judge Kane's extraordinary fee reduction in *Reyes v. Snowcap Creamery, Inc.* (2014 WL 2459740) was existing precedent for a large fee reduction when this Court decided *Roane v. Frankie's Bar & Grill,* earlier this year.  This Court did not rely upon it when deciding a reasonable fee in Ms. Roane's case.  It is worth noting that no court has relied on *Snowcap* as authority to reduce fees since it was decided four years ago.

In *Roane* this Court applied a more careful analysis, giving substantial weight to the fact that the plaintiff proved that Title VII had been violated.  The Plaintiff in *Roane* vindicated her right to be free from discrimination by obtaining a judgment against the Defendant.  Stephanie Lopez vindicated her right not to have earned wages illegally withheld by her employer when she obtained a judgment against her employer.  Her success should not be measured only by the size of the judgment.

Also significant, and unique to this case, was the Defendants' willingness and ability to pay attorney's fees which had no relationship to the wages owed.  Plaintiff's counsel makes an educated estimate that Carl Edwards paid between $250,000 and $300,000.00 in fees and costs to two law firms because he was unwilling to pay Stephanie Lopez more than a dollar.

The estimate of total fees and costs paid to BKN Murray, LLP and Godfrey Johnson by Carl Edwards is based on the undersigned's knowledge of billing practices of employment defense firms and the zealous commitment in this case to litigate almost every possible issue rather than pay Stephanie Lopez any settlement.

If $250,000.00 or $300,000.00 is a reasonable fee to prevent entry of a judgement of more than $1.00 then, it can fairly be said, that $166,000.00 is a reasonable fee to prove that earned wages were not paid to Stephanie Lopez by Carl Edwards.

**4. Costs**

Defendants argue that Plaintiff's out-of-pocket costs should be reduced by the same percentage as fees. Defendants offer no authority for reducing an award of costs in this manner. All of the costs itemized in counsel's affidavit (DOC # 148-1) were costs actually incurred.

Nothing would be a greater deterrent to representation of indigent clients than for a Court to deny costs actually incurred. The legal standard is whether they are costs customarily billed to clients in addition to hourly fees. Defendants do not argue that the itemized costs are not the type customarily billed in addition to hourly fees. Defendants quibble about the investigator's invoice which does not itemize which witnesses were interviewed. The use of an investigator was necessary in this case in the judgment of counsel and is a cost customarily billed in addition to hourly fees. While defense counsel in this case chose to have a lawyer interview witnesses, using a lawyer for this purpose is more expensive than using an investigator and can raise ethical issues for the lawyer.

As to the photocopy costs, photocopy costs are charged to the clients of Cornish & Dell'Olio, P.C. at the rate of 10 cents a page. Cornish & Dell'Olio, P.C. works from paper copies of documents as well as electronic documents. Paper copies are used for

many purposes by Cornish & Dell'Olio, P.C. The amount included in the affidavit is the cost actually incurred which has been billed to Stephanie Lopez. Legal Research is billed to clients at $25.00 per Lexis session which reimburses some but not all of the monthly subscription costs of Lexis.

**Conclusion**

For the foregoing reasons Plaintiff requests that the Court award to Plaintiff a reasonable fee including those costs customarily billed to clients in addition to the hourly fees.

Respectfully submitted this 30th day of November, 2018.

CORNISH & DELL'OLIO, P.C.

s/ Donna Dell'Olio
Donna Dell'Olio, #10887
Julie D. Yeagle, # 52247
Cornish & Dell'Olio, P.C.
431 N. Cascade Avenue, Ste. 1
Colorado Springs, CO 80903
TEL (719) 475-1204
FAX (719) 475-1264
Email: ddellolio@cornishanddellolio.com
jyeagle@cornishanddellolio.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of November, 2018, I electronically filed with the Clerk of Court using the CM/ECF system a true and correct copy of the foregoing **Reply to Defendants' Response Opposing Plaintiff's Motion for Award of Attorney's Fees and Costs, Pursuant to 29 U.S.C. § 216(B) DOC # 153** was sent by email:

Brett Godfrey
Lily Nierenberg
GODFREY | JOHNSON, P.C.
9557 S. Kingston Court
Englewood, CO 80112
Email: godfrey@gojolaw.com
Email: nierenberg@gojolaw.com

Stephanie Lopez
Via hand delivery

              s/Esther Kumma Abramson
              Esther Kumma Abramson